### In re GRAND JURY MATTER

**Misc. No. 79–198.**

United States District Court,
E. D. Pennsylvania.

July 11, 1980.

Alan H. Yamamoto, U.S. Dept. of Labor, Washington, D.C., and Bonnie B. Leadbetter, Asst. U.S. Atty., Philadelphia, Pa., for the Government.

Mark N. Savit, Bruce A. McDonald, Cotten, Day & Doyle, Washington, D.C., Barry F. Greenberg, Joseph H. Weiss Associates, Philadelphia, Pa., for petitioner.

## BENCH OPINION [1]

LOUIS H. POLLAK, District Judge.

In the summer of 1979, I was asked to direct the release to officials of the Mine Safety and Health Administration, an agency within the Department of Labor, of transcripts of certain proceedings held before a grand jury here in the Eastern District of Pennsylvania. That grand jury had inquired into the question whether perjury had been committed at certain public hearings conducted by the Mine Safety and Health Administration, apparently in conjunction with certain state authorities, for the purpose of inquiring into the circumstances surrounding a very tragic accident which took place in Pennsylvania in a coal mine in 1977; the coal mine was under the administrative supervision of the Mine Safety and Health Administration (MSHA) and its predecessor agency, an agency with a slightly different name, formerly located in the Department of the Interior, from which MSHA has inherited its statutory and administrative responsibilities.

The application advised me that the grand jury had not returned a true bill, which fact had been conveyed by the United States Attorney to the Department of Labor. The application explained that release of the proceedings before the grand jury was important to MSHA so that it could carry out its statutory responsibilities which looked in the direction of civil enforcement proceedings.

There was also reference in the application to other responsibilities of the agency which would be facilitated by a release of the proceedings—namely, the development, if necessary, of revised mandatory safety standards, and making public report of the events surrounding the tragic accident of 1977.

1. This memorandum is a transcription of an opinion I delivered from the bench on July 9, 1980. Apart from (a) typographical corrections, and (b) a number of minor emendations designed to bring the text to certain minimum standards of intelligibility without altering the meaning or tone of the opinion as delivered from the bench, this memorandum is identical to the official transcript of the June 9 bench opinion. To the extent this memorandum may differ in detail from the June 9 transcript, this memorandum, which will be filed of record in this case, constitutes the more accurate exposition of my views.

The application to me was made *ex parte* and it was made pursuant to Federal Rule of Criminal Procedure 6(e). That rule states in relevant part that, "Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made when so directed by a court preliminarily to or in connection with a judicial proceeding." This is language taken from Rule 6(e)(3)(C)(i).

On July 20, 1979, I granted the application and I supplemented that order in September of 1979 when I was advised that the release of further transcripts not covered by the July 20, 1979 order was sought for the same reasons and under the same authority.

In February of 1980, the Mine Safety and Health Administration, on behalf of the Secretary of Labor, issued citations against Kocher Coal Company, thereby initiating a civil proceeding before the Department of Labor—which proceeding would, if the respondent resisted the citation, lead to an adjudication of the Secretary's citation and of the Secretary's proposed findings of appropriate penalty, if any, by an administrative law judge who is a member of the Mine Safety and Health Review Commission.

The citation issued in February was resisted by Kocher Coal Company, thereby setting the stage for the administrative proceeding contemplated. But, at the same time, the resistance of respondent Kocher took the form of an application to vacate the citation and expedite the hearing which, together with certain judicial proceedings to which I shall now refer, brought to a focus the matters which are at issue before this court today.

Certainly just after, but it now appears very shortly before, the public issuance by the Secretary of the citation, Kocher and its officials were advised by MSHA that an order from this court last year had directed the release to MSHA of transcripts of grand jury proceedings. Believing that release to be unauthorized in law, Kocher and its general mine foreman, Samuel Klinger, moved in this court to vacate my order of last July 20, supplemented by the September order, for release of grand jury proceedings; and Kocher and Klinger also sought a declaration that the citation and associated administrative proceedings which followed chronologically subsequent to, and allegedly flowing from, the release of the grand jury transcripts, be determined to be unlawful in their inception and restrained.

The assignment by the Clerk of this court of these requests by Kocher and Klinger for equitable relief resulted in the motion for vacation of my July and September, 1979, orders being placed on my calendar, while the associated request for equitable relief enjoining the administrative proceedings went to Judge Troutman.

Judge Troutman, on March 25 of this year, granted plaintiffs' application for a preliminary injunction. Specifically, what Judge Troutman directed was that:

Defendants Ray Marshall, Robert B. Lagather, John B. Shutack, Charles C. Klinger and all of their officers, agents, servants, employees, attorneys and all those in active concert or participation with any of them are enjoined from further viewing or in any other way reviewing the contents of the transcripts of the subject grand jury proceedings; from disclosing to any person whatsoever, either orally or by publication or by another means, including reports to the public, citations, orders or directives, any information contained within the transcripts of the subject grand jury proceedings. IT IS FURTHER ORDERED that all administrative proceedings heretofore initiated or to be hereafter initiated based in whole or in part on information contained in transcripts of the grand jury proceedings are hereby preliminarily enjoined and stayed pending final hearing and further Order of Court.

It is apparent from the transcript of the proceedings before Judge Troutman, who kindly made that transcript available to me, that Judge Troutman, on March 25, on the day on which the order from which I have quoted was entered, contemplated that his preliminary injunction would remain in force pending my determination of the ap-

plication made to me to vacate my orders of disclosure of grand jury transcripts.

The claim by Kocher and Samuel Klinger that my orders of last summer were unwarranted rests essentially on three separate propositions:

The first proposition is that it was error for me to resolve the applications on an *ex parte* basis. This proposition breaks down, really, into two subheadings, one of which is that the application should not have been made *ex parte*; the second subproposition is that the application should, in any event, not have been determined by me on an *ex parte* basis, that is to say, without giving notice to Kocher and Samuel Klinger before ruling on the agency's request.

The second proposition which is urged is that, even assuming that I had authority to entertain the application on an *ex parte* basis, or that so entertaining it was not an abuse of discretion, my order of release was not warranted by Rule 6(e) for the reason that 6(e)(3)(C)(i) is limited to situations in which release is requested for the purpose of carrying out a court directive as follows: "when so directed by a court preliminarily to or in connection with a judicial proceeding." The argument is that the proceedings to be initiated, and which since have been initiated, by MSHA pursuant to the Secretary's citation, are not "a judicial proceeding" within the meaning of the quoted language.

The third ground asserted by plaintiffs is that, even if it be assumed that the proceedings initiated by the Secretary's citation constitute "a judicial proceeding" within the meaning of the rule, the showing required by the rule in its gloss, if not in its explicit verbiage, is one of "particularized need" as that showing has been characterized by a course of judicial decisions, most particularly the Supreme Court's decision in the *United States v. Procter & Gamble*, case, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077. It is plaintiffs' view that the requisite showing of particularized need was not here made by MSHA and, given the chronology in which the application was made before the initiation of any proceeding by

the Secretary, or on the Secretary's behalf, could not have been made at that time.

The view which I have taken of this application is that I will begin with the question whether the proceeding contemplated by the Coal Mine Safety Act, which MSHA is responsible for enforcing, is "a judicial proceeding" within the meaning of the rule, that is to say, within the meaning of Rule 6(e).

In effect, it is the position of the Mine Safety and Health Administration that the proceeding initiated by the Secretary's citation is itself "a judicial proceeding" within the meaning of the rule or, in the alternative, is preliminary to "a judicial proceeding" for the reason that decisions of the Mine Safety and Health Review Commission sustaining, in part or in whole, the Secretary's citation and proposed penalties are decisions reviewable by a United States Court of Appeals.

There is no unambiguous learning on what constitutes "a judicial proceeding" for the purpose of this aspect of Rule 6(e). It is evident from cases going back years before 6(e) was in its present form, but at a time when 6(e), nonetheless, contained that critical language, that the "judicial proceeding" contemplated by the rule referred to more than criminal proceedings; that is to say, the fact that the administration of MSHA is here seeking to carry out civil law-enforcement obligations does not take it outside the ambit of 6(e).

On the other hand, it is also apparent that at least a substantial number of courts have shied away from any view that a civil proceeding which is carried out within the bosom of what in standard terminology we call a federal administrative agency is itself "a judicial proceeding" within the meaning of the rule or, indeed, is a proceeding which is preliminary to "a judicial proceeding" merely because there is a form of judicial revision which is contemplated somewhere at the end of the appellate pathway.

Now, in that connection, I think it is instructive to see what our own Court of Appeals determined back in 1962 in the

decision by Circuit Judge Smith in which the question before the court was whether release to the Federal Trade Commission was authorized, where what the Federal Trade Commission was doing was conducting an *ex parte* investigation which could result in a recommendation to the Attorney General that the Attorney General institute enforcement proceedings.

The decision of this Court of Appeals in *In re: Grand Jury Proceeding*, 309 F.2d 440 (3rd Cir.), was to reject the contention of the Federal Trade Commission that disclosure was appropriate. The court there affirmed a denial by a judge of this court, Judge Wood, of an application under the previous wording of the rule now invoked by MSHA. "The Commission," said the Third Circuit in 1962:

> urges in further support of its petition the pertinent provision of the second sentence of the rule, supra, which authorizes the disclosure of matters occurring before the grand jury when "directed by the court preliminarily to or in connection with a judicial proceeding." It is argued that the requirements of the rule are satisfied in the instant case. We cannot agree. The commission does not seek the grand jury evidence for use in any judicial proceeding; it seeks a private disclosure in aid of an administrative investigation into possible violations of the cease and desist orders.
>
> There is no judicial proceeding now pending and it is possible none may result from the investigation. The function of the Commission is to ascertain whether there is reason to believe that one or more of the corporations is liable to a penalty and, if it is so ascertained, to certify the facts to the Attorney General. The exclusive authority to enforce the statutory provision is vested in the Attorney General. 15 U.S.C.A., *supra*, at footnote 6. The investigation undertaken by the commission is preliminary to and in connection with the *ex parte* proceeding contemplated by the statute; it is not preliminary to or in connection with a judicial proceeding within the intendment of the rule.

Now, in urging that the decision of the Court of Appeals in that case be distinguished from the instant case, MSHA, of course, stresses the fact that the FTC was merely engaged in an investigation preliminary to a recommendation which might ensue to the Attorney General who was the official who alone could institute "a judicial proceeding" and, hence, no judicial proceeding was in process or even imminent.

The survival of the Court of Appeals' decision in that case as guiding jurisprudence is manifest in the fact that it is invoked in an opinion so recent that when presented to the court this morning all that was in evidence was a xerox copy, namely, the per curiam decision of the Court of Appeals for the District of Columbia in *United States v. Bates*, 200 U.S.App.D.C. ——, 627 F.2d 349 (1980) as appearing in the *Daily Washington Law Reporter* for May 22, 1980 [Also reported at 1980–2 Trade Cas. ¶ 63,297].

In that case, the Court of Appeals for the District of Columbia sustained Judge June Green in declining to direct the release to the Federal Maritime Commission under Rule 6(e)(3)(C)(i) of grand jury materials which the Maritime Commission alleged were to be used in an adjudicatory hearing—as the Court of Appeals characterized it, "an adjudicatory hearing to be held to determine whether practices alleged in the indictments violated Section 15 of the Shipping Act, 46 U.S.C. § 814." "The district court," says the United States Court of Appeals for the District of Columbia:

> denied the Commission's petition, holding that the grand jury materials sought are not preliminary to or in connection with a judicial proceeding as required by the Rule. We affirm. See *In re: Grand Jury Proceedings*, 309 F.2d 440 (3rd Cir. 1962) (Federal Trade Commission investigation was administrative, and not preliminary to a judicial proceeding)."

Those decisions, one in 1962 and one this spring, may set outer boundaries, but they do not perhaps clearly define what "a judi-

cial proceeding" is within the meaning of Rule 6(e). The closest definition I believe that we have from an authoritative source is the definition given by Judge Learned Hand in *Doe v. Rosenberry*, 255 F.2d 118, 120 (2nd Cir.), and this was in 1958. Judge Hand was approving a district court order which directed the disclosure to the grievance committee of the Bar Association of the City of New York of certain grand jury proceedings which were felt by the grievance committee to be important to it in determining whether to initiate before the Appellate Division of the New York Supreme Court a disciplinary proceeding against a member of the New York bar. "We cannot agree," said Judge Hand:

> that the Rule should be limited to criminal proceedings; on the contrary we hold that, prima facie, the term "judicial proceeding" includes any proceeding determinable by a court, having for its object the compliance of any person, subject to judicial control, with standards imposed upon his conduct in the public interest, even though such compliance is enforced without the procedure applicable to the punishment of crime.

For me, then, the essential question is whether this is a proceeding—that is to say, the proceeding initiated by the Secretary's citation—which can be properly characterized as a proceeding "determinable by a court" or one preliminary to such a proceeding.

Plainly enough, the proceeding initiated by the Secretary's citation is not itself a proceeding "determinable by a court." Is it preliminary to such a proceeding? As the language of Judge Hand has acquired further musculature from subsequent decisions, it seems to me that the courts have made it plain that the only proceedings which may be characterized as preliminary to "a judicial proceeding" are those in which the sequence from what may conventionally be called administrative process to judicial process is a clear pathway and one in which the ultimate judicial role is a very substantial one.

This is, in my judgment, what is reflected, indeed, in the very cases which are substantially relied on by MSHA, which cases include, of course *Doe v. Rosenberry* itself, *Special February 1971 Grand Jury v. Conlisk*, a decision of the Seventh Circuit in 1973, 490 F.2d 894, and an Eighth Circuit decision in 1978, *In The Matter Of Disclosure Of Testimony Before The Grand Jury*, 580 F.2d 281 (8th Cir.).

I have already indicated what sort of a proceeding *Doe v. Rosenberry* was. *In The Matter Of Disclosure Of Testimony Before The Grand Jury* was similar in the sense that it was an application by the City of Omaha, the Council for Discipline of the Nebraska State Bar Association, and the Nebraska Committee on Judicial Qualifications, and in that case the Eighth Circuit concluded that, "In the instant case the district court found that the procedures for prosecuting violators of criminal laws, disciplining lawyers and removing judges were designed to culminate in a judicial proceeding and, therefore, all the requests of the applicants were 'preliminary to or in connection with a judicial proceeding.' We agree."

In *Conlisk*, the Seventh Circuit case, what was involved was a proceeding requesting disclosure to the Superintendent of Police in Chicago of grand jury transcripts relating to certain policemen whose discipline was contemplated, and the Seventh Circuit, after careful examination of the Illinois procedure, through the prism of Judge Hand's language in *Doe v. Rosenberry*, noted, "The power of the Illinois courts on review of the board's findings is vast. It extends to all questions of law and of fact presented in the record." Finally, the Seventh Circuit said: "We conclude, therefore, that the requirement of a judicial proceeding is satisfied by this statutory scheme."

All this, so it seems to me, is in marked contrast with the procedure contemplated by proceedings initiated by the Secretary's citation under the Coal Mine Safety Act, which can result, if adverse to the plaintiffs, in a sustaining of a citation and of penalties.

The judicial recourse in the conventional sense of "judicial proceeding" is by application for review in a court of appeals—presumably, in this instance, the Third Circuit—in a proceeding where, as with conventional judicial review of administrative proceedings, the findings of the administrative agency are conclusive if supported by substantial evidence, and there is nothing like an opportunity for that judicial canvass of the administrative record on fact and law contemplated, for example, by the Seventh Circuit in *Conlisk,* or, just as clearly, by the proceedings by which the Appellate Division reviews a proposal for judicial discipline of an attorney under the grievance mechanism in New York City.

It is perhaps worthy of emphasis that the procedures for judicial review of determinations of the Mine Safety and Health Review Commission which are now in place are in marked contrast with the procedures for judicial review which were in place as recently as when the very accident in question in 1977 happened but which have since been superseded. Under those statutory procedures there was provision for *de novo* review in a district court. The fact that those procedures were in place at the time of this accident does not lead the agency to suggest that such procedures would now be available to the plaintiffs by way of review of a potentially adverse determination by the Mine Safety and Health Review Commission.

█ So for these reasons, I conclude that the determination which I made as a necessary predicate for my orders of last July and September—that the application before me was rightly made preliminarily to or in connection with a judicial proceeding—was in error, and that error which I made entitles me and, indeed, obliges me to vacate those orders.

The determination which I have made makes it unnecessary for me to consider the other contentions which plaintiffs have urged:

Let me say briefly that I think there is considerable substance to the assertion that the showing of particularized need which was presented in the materials which I looked at *ex parte* was conclusory and perhaps not satisfactorily pointed enough. It is to be noted, for example, that at least certain of the statements of need, namely, those going to the agency's obligation to, from time to time, update its mandatory safety standards, and those going to the need to make public report, were not assertions which in hindsight, whatever I may have thought at the time of the issuance of the orders, seem to be justifiable even verbally as being preliminary to or in connection with a judicial proceeding.

I understand the agency, in effect, to acknowledge that, but to suggest that if there was a valid independent rationale connecting the release with a judicial proceeding, those auxiliary needs would have been appropriately servable by the release.

At this point, I would simply register substantial dubiety about that proposition.

The more important question, of course, is whether a particularized need could realistically have been made with respect to "a judicial proceeding" if one assumes for the moment, as I have held otherwise, that the agency proceeding which had not yet been commenced was itself either "a judicial proceeding" or one preliminary to a subsequent judicial proceeding, namely, review in the Court of Appeals.

Certain it is that the agency's current statement that it requires the release of the transcripts for possible impeachment or refreshment-of-recollection purposes in the proceedings before the Mine Safety and Health Review Commission is a statement which would have only been in the realm of prophecy of a fairly remote sort had it been made—as it was not made, I would want it clearly understood, in all fairness to the agency—at the time the application to me was submitted.

So, in short, and I would simply leave it at this for the moment, I think it not at all clear that—even assuming the agency was right in regarding the proceeding in connection with which disclosure was sought to be made as a judicial proceeding itself or pre-

liminary to a judicial proceeding—a sufficient showing of particularized need could have been made at the time when I determined that, indeed, such a showing had been made.

■ Finally, as to the first question posed by plaintiffs—whether this application should have been made *ex parte* or treated *ex parte*—I do not find a ground for faulting the agency for making its application to me *ex parte*. I understand from the legislative history of Rule 6(e) as amended in 1977 that the Senate Judiciary Committee was explicit in contemplating that applications could be made *ex parte* in order to maximize grand jury secrecy.

I do have grounds, though, I think, for faulting myself in treating the application *ex parte*. The cases, though by no means uniform, do suggest that some judges have opened up *ex parte* applications to the adversary process and that is well reflected, for example, in *In re: Grand Jury Investigation*, 414 F.Supp. 74 (D.C.N.Y.), a decision by Judge Milton Pollack in the Southern District of New York in 1976. Certainly our legal institutions presuppose a preference for adversariness over *ex parte* ness whenever that can be reasonably achieved, and I think it could have been achieved in this case had I had the wit to so view it at the time the application was made to me. This second chance which I now have to review this matter leads me to think that if an application of this sort were to come before me again *ex parte*, I would be strongly disposed to translate it into an adversary process before ruling on the application. Had I done so last time, it seems to me that I might conceivably have received at an earlier time the light which has now, so it seems to me, been shed on the matter, courtesy of counsel. I do want to make it clear that I mean today counsel for MSHA as well as counsel for the plaintiffs.

Well, with these observations, I, therefore, determine now that I am granting as of this moment the application to vacate the orders of release of July 20, 1979, and that of September. Whether any further relief is required at this time is something I would like not to try to make a hasty determination with respect to.

I think at a minimum the plaintiffs are entitled to substantially the relief requested in the draft order which was submitted to me which requires the return by the defendants of the transcripts themselves and of all excerpts, notes, summaries, et cetera, and enjoins any further disclosure either within or without the agency of any of the matters which those who have been privy to the grand jury transcripts themselves or any notes or summaries made therefrom may have had the advantage of.

I am not going to try, as of this moment from the bench, to draft an appropriate order. I will ask counsel for plaintiffs and for the agency to try to agree upon a form of order, bearing in mind both the proceedings which are still pending before Judge Troutman and the possibility that MSHA may not perceive the wisdom in my disposition and may wish to go to the Court of Appeals for a further view by it of what the rules are prevailing in this circuit.

If there is no further question, and I hope there is none, I am going to take my leave of you because I have to catch a train in a very few minutes.

Does that leave you enough to deal with for the time being and may I put it to the joint efforts of counsel to advise me what, if anything, further needs to be done?

### ORDER

AND NOW, to wit, this 26 day of June 1980, upon consideration of Movant's Motion to Vacate Order, it is hereby Ordered and Decreed that the Orders of this Court, dated July 20, 1979 and September 18, 1979, shall be, and hereby are, revoked and rescinded; and it is further Ordered and Decreed that the Grand Jury transcripts which were released pursuant to said Orders, and all copies thereof, including all abstracts and digests of said transcripts, shall be forthwith returned to the custody of this Court; and it is further Ordered and Decreed that the contents of said transcripts shall not be quoted, reproduced, para-

phrased, or otherwise disseminated in any manner whatsoever by the United States Department of Labor, by the Federal Mine Safety and Health Administration, by any representatives of said entities, or by any other person who gained knowledge of said transcripts or into whose possession said transcripts may have been delivered.