In re June 20, 1977 Concurrent Grand Jury Investigation, J. RAY McDERMOTT & COMPANY, INC., et al., Appellants.

No. 79–2843.

United States Court of Appeals,
Fifth Circuit.

July 24, 1980.

Wilson S. Shirley, Jr., New Orleans, La., for J. Ray McDermott & Co., Inc.

Bracewell & Patterson, John A. Buck, Houston, Tex., for Crews and Lietz.

Kostelanetz & Ritholz, Denis McInerney, New York City, Oestreicher & Whalen, Walter J. Rothschild, New Orleans, La., for Jane Doe and Mary Roe.

Robert Gold, John J. Tigue, Jr., Elliot Silverman, Susan W. Sweeney, New York City, for Doe, Roe and Coe.

Robert Lewis Thompson, Antitrust Div., Dept. of Justice, Washington, D. C., Steven A. Shaw, F.E.R.C., Sheila S. Hollis, Joshua Z. Rokach, Washington, D. C., for appellee.

Before HILL, SAM D. JOHNSON and THOMAS A. CLARK, Circuit Judges.

JAMES C. HILL, Circuit Judge:

This appeal is from an order of the United States District Court for the Eastern District of Louisiana directing disclosure to the Federal Energy Regulatory Commission (FERC) of grand jury documents and transcripts described in the order, pursuant to Federal Rule of Criminal Procedure 6(e)(3)(C)(i) which permits otherwise prohibited disclosure of matters occurring before a federal grand jury

> when so directed by a court preliminarily to or in connection with a judicial proceeding.

Appellants, a corporation that pleaded *nolo contendere* to charges in the grand jury's indictment, past and present employees of the corporation who testified before the grand jury pursuant to grants of immunity, and secretaries presently employed by the corporation who testified before the grand jury pursuant to subpoena, argue in the alternative that: (1) FERC did not seek these materials "preliminarily to or in connection with a judicial proceeding"; and (2) FERC was required, and failed, to show a particularized need for the grand jury materials in order to gain access to any such materials and the absence of particularized need prevented proper limitation of disclosure. Because we agree with appellants' first assertion, we do not reach their second point.

The June 20, 1977 concurrent Grand Jury in the Eastern District of Louisiana was empanelled, apparently by Judge Lansing L. Mitchell,[1] to investigate price fixing in the marine construction industry. This investigation resulted in an indictment, filed on December 14, 1978, charging the corporate appellant here plus another corporation and six individuals with conspiring in restraint of trade, in violation of 15 U.S.C.A. § 1, and using the mails and interstate wire communications in furtherance of a scheme to defraud, in violation of 18 U.S.C.A. §§ 1341 and 1343. The indictment alleged that corporations and individuals who were

---

1. In a separate action, several corporations filed a motion with another district judge to preserve documents submitted to this grand jury and to permit movants to inspect and copy such documents. After noting that the motion was presented to him apparently on the theory that he had empanelled the grand jury, this judge transferred the matter to Judge Mitchell, Record, vol. 1 at 72.

engaged in "marine construction" (defined as the design, engineering, fabrication, and installation of undersea pipelines and offshore structures) had conspired to defraud the purchasers of marine construction services by submitting collusive, noncompetitive, and rigged bids, allocating marine construction projects among themselves, and standardizing terms and conditions under which they were willing to offer their services. The indictment stated that these corporations and individuals had done what they conspired to do, with the effect that purchasers of those services were denied the benefits of competition in contracting and prices were fixed and maintained at artificial noncompetitive levels.

On January 5, 1979, the Public Service Commission of the State of New York petitioned FERC to initiate investigatory proceedings pursuant to subsections c, d, m, and o [2] of 15 U.S.C.A. § 717 (the Natural Gas Act) and to inquire into the possibility that interstate pipelines had been overcharged for construction by those indicted by the grand jury, adding that such overpayments presumably were and are being passed on to the pipelines' customers and that FERC should take appropriate steps to make gas consumers whole if its investigation should show this. According to FERC, in February 1979 it began conducting a preliminary investigation into these matters.[3]

All defendants charged in the indictment pleaded *nolo contendere* and final judgment was entered on May 30, 1979. On June 6, 1979, FERC filed a petition, apparently accompanied by a supporting memorandum,[4] with Judge Mitchell asking that the court release all transcripts of testimony before the grand jury, and documents secured pursuant to the grand jury's subpoena power, "relating to the offshore marine construction investigation" leading to the indictment "charging, *inter alia*, J. Ray McDermott & Co., Inc. and Brown & Root, Inc. with criminal offenses involving bidrigging for the construction of marine equipment for, among others, interstate natural gas pipeline companies over which the Commission has jurisdiction." The petition asserted: that FERC is charged with the duty to regulate the interstate transportation and distribution of natural gas; that FERC sought release of grand jury materials

> in furtherance of its investigation into certain marine projects constructed by J. Ray McDermott & Co., Inc., and Brown & Root, Inc. for various natural gas pipeline companies, preliminary to and in connection with a judicial proceeding;

that the

> testimony and documents received by the Grand Jury are relevant and material to the scope of the FERC's investigation, and would aid the commission in an independent investigation, well within its statutory authority;

and that the grand jury proceeding was conducted for a legitimate criminal purpose, not as a subterfuge for obtaining records for a civil investigation as evidenced by the fact that FERC did not commence or even contemplate its investigation until the indictment was issued.

In its supporting memorandum, FERC stated that it sought the material

---

**2.** These subsections are described more fully below. In general they declare unjust and unreasonable natural gas rates unlawful, prohibit natural gas companies from granting any preferences, and authorize FERC to fix rates, issue orders, and compel the attendance of witnesses and production of documents for use in its investigations. The petition did not mention FERC's authority to seek injunctive relief in federal district court.

**3.** FERC asserted this in a memorandum supporting its petition for disclosure, *see* note 4, *infra.*

**4.** "Memorandum in Support of 'Petition for Disclosure of Certain Grand Jury Materials,'" Record, vol. 1, at 115. This document appears in the record without any indication that it was filed with the district court clerk and the district judge in his first order on June 7, 1979 referred to the petition only, not this memorandum. Assuming that the memorandum was filed does not, however, affect our disposition of this case on appeal.

in furtherance of its investigation into facts alleged in the indictment;—and, more specifically the effect of the pipeline companies' presumably inflated costs upon the rates consumers have been required to pay for natural gas under rates set by the FERC and its predecessor agency the Federal Power Commission pursuant to its authority under the NGA.

Since February 1979 the FERC has been conducting a preliminary investigation pursuant to the Natural Gas Act, 15 U.S.C. § 717, of this matter. The Commission's preliminary concern is the determination of the existence of possible civil violations of the Natural Gas Act as a result of the inclusion of the costs in jurisdictional rate proceedings improperly inflated by the bid rigging that would require the filing of civil actions in a federal district court for, *inter alia*, injunctions and/or monetary refunds to consumers of natural gas. J. Ray McDermott & Co., Inc. and Brown & Root, Inc., as non-jurisdictional entities, are not the subjects of the Commission's investigation.

Although the FERC has the statutory authority to compel the testimony of witnesses, and to subpoena documents which are "relevant or material" to its investigations, 15 U.S.C. § 717m, it seeks this order to preserve existing documents which may be lost or destroyed and to minimize the expense to the taxpayer of obtaining via subpoena or otherwise information already obtained in the Grand Jury proceedings (footnote omitted).

Without holding a hearing, the district judge ordered that all such grand jury documents and transcripts be disclosed to FERC, that government attorneys with knowledge of the subject investigation disclose to FERC all matters presented to and/or occurring before the grand jury relating to the subject investigation, and that an earlier impounding order be extended to permit FERC to review and copy the documents. In his order the trial judge stated that upon consideration of FERC's petition, it appeared that the grand jury received the materials for a legitimate criminal purpose and that FERC "requires the material preliminarily to or in connection with a judicial proceeding."

Upon learning of the order, J. Ray McDermott & Co., Inc. (McDermott) moved for a hearing on the ground, *inter alia*, that FERC's petition did not show that it needed the grand jury material to avoid possible injustice "in another judicial proceeding." The court granted this motion [5] and at a hearing on June 27, 1979 FERC stated that it sought access to these materials to determine whether any of the pipeline corporations under FERC's jurisdiction had violated the law by conspiring with each other or with those indicted by the grand jury in regard to collusive bidding.[6] FERC told the court that if the Commission found evidence of conspiracy it could bring a proceeding against pipeline companies and gas producers and obtain a refund for the end users of natural gas. Again the district court found that it was "clear that the materials described herein are related to a lawful investigation conducted by FERC that may result in a judicial proceeding" and ordered disclosure of documents and transcripts dealing with entities that FERC regulates and bidding on and construction of natural gas platforms and pipelines. This order of July 12, 1979 included a protective provision limiting FERC to using or disclosing the materials only in connection

---

**5.** McDermott also sought a stay of the June 7th order pending the hearing. A deputy director of FERC's Office of Enforcement had viewed certain grand jury documents on June 8, 1979, but on June 14, 1979 counsel for FERC consented to the stay, agreeing not to proceed with inspection and copying of the materials. Record, vol. 1, at 218–19. On October 4, 1979, a panel of this court granted appellants' motion for a stay of the district court's order of July 12, 1979 pending this appeal, thus further disclosure has not taken place.

**6.** At this hearing, an attorney with the Department of Justice stated that he had looked at the grand jury documents and that, to his knowledge, they contained no evidence of collusive bidding between pipelines, but he added that he had not scrutinized the documents for that very purpose. Supp. Record, at 24.

with or preliminarily to a formal "adjudicatory proceeding" instituted by FERC pursuant to 15 U.S.C.A. § 717n [7] or federal court litigation instituted by FERC pursuant to § 717s and any appeal that arises therefrom.

Since FERC in its petition, memorandum, and the testimony of its attorney stated that it sought the materials in connection with two different types of proceedings, an administrative hearing that it could conduct and an action in district court that it could initiate, and the district court in the protective portion of its order referred to both, we must first determine whether either is a "judicial" proceeding and, if so, whether disclosure was "preliminarily to or in connection with" such a proceeding.

As part of the creation of the Department of Energy, the functions of the Federal Power Commission relating to, *inter alia*, natural gas rates and charges under the Natural Gas Act were transferred to FERC. 42 U.S.C.A. §§ 7101–7352. Subsection c prohibits natural gas companies from granting undue preference to any person and declares rates or charges that are not just and reasonable to be unlawful. Subsection n of the Natural Gas Act authorizes FERC to conduct hearings, which may be informal.[8] If, after a hearing, FERC determines that a natural gas rate charged by a company subject to FERC's jurisdiction is unjust or unreasonable, FERC may determine the just and reasonable rate to be in force thereafter and fix this rate by order, subsection d. FERC has the power to issue orders, rules, and regulations, subsection *o*. A party aggrieved by a FERC order, after applying to FERC for a rehearing, may obtain a review of that order by a federal court of appeals. The court may affirm, modify, or set aside such an order in whole or in part but FERC's findings as to facts, if supported by substantial evidence, are conclusive, subsection r.

FERC argues that disclosure for its administrative proceedings, which are subject to judicial review, is disclosure "preliminarily or in connection with a judicial proceeding." According to Judge Learned Hand the term "judicial proceeding" in Rule 6(e)

includes any proceeding determinable by a court, having for its object the compliance of any person, subject to judicial control, with standards imposed upon his conduct in the public interest, even though such compliance is enforced without the procedure applicable to the punishment of crime,

*Doe v. Rosenberry,* 255 F.2d 118, 120 (2d Cir. 1958). This description has been cited approvingly by courts holding that certain quasi-judicial proceedings for disciplining police officers, government employees, attorneys, and judges satisfied Rule 6(e)(3)(C)(i) or its predecessor where: the proceedings were designed to culminate in judicial review; the statute authorizing the proceedings envisioned that initial findings subsequently would be presented to a court; or resort to judicial review was clearly contemplated. *See, e. g., Special February 1971 Grand Jury v. Conlisk,* 490 F.2d 894 (7th Cir. 1973); *United States v. Salanitro,* 437 F.Supp. 240 (D.Neb.1977).

First, we agree with the statement of the Court of Appeals for the District of Columbia in *United States v. Bates,* No. 79–1930, 79–1921, 79–2162, slip op. at 4 (D.C.Cir. April 14, 1980, that prcoeedings to discipline attorneys where bar committees act as an arm of the court are part of judicial proceedings because this function has been assigned to the judiciary from time immemorial. Without necessarily agreeing with the cases cited above that other types of proceedings satisfy the requirements of Rule 6(e), we note that the courts have categorized them as quasi-judicial. The hearings and setting of rates here are not quasi-judicial but, rather, are purely administrative. The fact that one aggrieved by a FERC order following an informal administrative hearing may obtain review in a circuit court of appeals where FERC's factual

---

**7.** Subsection n permits hearings before FERC, its members, and designated representatives; it does not denominate these hearings "adjudicatory."

**8.** *See* note 7 *supra*.

findings are conclusive if supported by substantial evidence also distinguishes the present case from those cited above where court involvement was more closely tied to the earlier proceeding.

Subsection s of the Natural Gas Act provides in pertinent part:

(a) Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this chapter, or of any rule, regulation, or order thereunder, it may in its discretion bring an action in the proper district court of the United States . . . to enjoin such acts or practices and to enforce compliance with this chapter or any rule, regulation, or order thereunder, and upon a proper showing a permanent or temporary injunction or decree or restraining order shall be granted without bond. The Commission may transmit such evidence as may be available concerning such acts or practices or concerning apparent violations of the Federal antitrust laws to the Attorney General, who, in his discretion, may institute the necessary criminal proceedings.

(b) Upon application of the Commission the district courts of the United States . . . shall have jurisdiction to issue writs of mandamus commanding any person to comply with the provisions of this chapter or any rule, regulation, or order of the Commission thereunder.

Subsection m empowers FERC to subpoena witnesses, compel their attendance, and require the production of records which the Commission finds relevant to its investigation, also authorized by this subsection, into

any facts, conditions, practices, or matters which it may find necessary or proper in order to determine whether any person has violated or is about to violate any provision of this chapter or any rule, regulation, or order thereunder, or to aid in the enforcement of the provisions of this chapter . . . . .

When it petitioned the district court for disclosure, FERC had not attempted to subpoena any witnesses or compel the production of any documents to carry out the investigation which it asserts it began in February 1979. At oral argument FERC's attorney stated that the Commission still had not done so, preferring to rely on disclosed grand jury materials to save time and money.

■ While the Natural Gas Act does permit FERC to seek injunctive relief in district court against those who appear to be violating, or about to violate, the statute or a FERC order, FERC has not yet brought such an action, issued such an order, or begun on its own to investigate facts which would "cause it to appear to the Commission" that such a violation had occurred or was about to occur. An injunctive action in federal district court would undoubtedly satisfy the "judicial proceeding" requirement of Rule 6(e). Here, however, FERC has only pointed to its statutory authority to bring such an action. The existence of subsection s on the statute books coupled with FERC's awareness of an indictment does not transform FERC's desire to investigate into something "preliminarily to or in connection with a judicial proceeding."

In *In re Grand Jury Proceedings*, 309 F.2d 440 (3d Cir. 1962), the court held that Rule 6(e) did not permit disclosure of grand jury materials to the Federal Trade Commission to aid its investigation into possible violations of its cease and desist orders. The court emphasized that (1) no judicial proceeding was then pending and that it was possible that none would result from the investigation and (2) that only the Attorney General, and not the Commission, had authority to enforce the statute there involved. Here FERC does have enforcement authority but that alone does not persuade us to find that disclosure was proper where the possibility of an enforcement proceeding is remote. *Accord, In re Grand Jury Investigation of Uranium Industry*, 19879–2 Trade Cases (CCH) § 62, 798 (D.D. C.1979, amended Aug. 21, 1979).

■ Without deciding whether a government agency must make the same showing of particularized need as *Douglas Oil Co. of*

*Cal. v. Petrol Stops, etc.*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), requires of a private party seeking disclosure of grand jury materials, we do note that the Court there focused on the need for a court ordering release to be familiar with both the grand jury proceedings and the contours of *the* later "judicial proceeding" so that it might properly limit disclosure. Where, as in the present case, a judicial proceeding is only a possibility, proper limitation is practically foreclosed.

■ Grand jury secrecy has traditionally been protected. Rule 6(e) continues that protection while permitting disclosure of grand jury materials in certain specific circumstances. A district court to whom application for disclosure is made does exercise discretion in granting disclosure but may not thereby enlarge the exceptions to grand jury secrecy. We hold that the disclosure sought here would not be preliminary to nor in connection with a judicial proceeding.

The July 12, 1979 order of the district court is

REVERSED.