**In re APRIL 1977 GRAND JURY PROCEEDINGS.**

**Misc. No. 77–144.**

United States District Court,
E. D. Michigan, S. D.

Jan. 14, 1981.

Robert E. Forrest, Tax Division, Dept. of Justice, Washington, D. C., for government.

George J. Moscarino, Jones, Day, Reavis & Pogue, Cleveland, Ohio, Julius L. Russu,

W. Gerald Warren, Dickinson, Wright, McKean, Cudlip & Moon, Detroit, Mich., for General Motors Corp.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

The government has filed a motion that the Court order certain documents subpoenaed before the April, 1977 grand jury, specified grand jury transcripts and grand jury work papers, to be disclosed to representatives of Internal Revenue Service (IRS) for civil use in the ascertainment, assessment, and collection [1] of the revenue pursuant to Rule 6(e)(3)(C)(i), Federal Rules of Criminal Procedure, which provides as follows:

> "Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made - - -
> (i) when so directed by a court preliminarily to or in connection with a judicial proceeding. . . ."

Although 6(e) motions are frequently ex parte, the Court invited counsel for General Motors Corporation [2] to brief and argue the issues.

At the conclusion of oral argument on December 19, 1980, the Court orally denied the government's motion because, in the opinion of the Court, the use to be made of the material by the IRS is not preliminary to a judicial proceeding within the meaning of Rule 6(e).

The government's motion for disclosure under 6(e) is a step in a chain of events beginning with the IRS's examination of General Motors income tax returns for the calendar year 1972–1973. The IRS examination was suspended in April, 1977, when a grand jury—referred to in *In re April 1977 Grand Jury Subpoenas*, 573 F.2d 936 (6th Cir. 1978), and in *In re April 1977 Grand Jury Subpoenas*, 584 F.2d 1366 (6th Cir. 1978), *cert. denied*, 440 U.S. 934, 99 S.Ct. 1277, 59 L.Ed.2d 492 (1979)—began investigating allegedly false statements made by General Motors' employees to the IRS concerning expense materials. The grand jury investigation was suspended in April, 1978, upon release of the court of appeals' panel opinion. Upon denial of certiorari by the Supreme Court from the en banc opinion in February, 1979, the Justice Department was in a position to reinstitute its grand jury investigation. It elected not to do so. Finally, in the spring of 1980, the government informed General Motors and the Court that the grand jury investigation was terminated without indictment. The IRS examination resumed, in part, at that time, although that portion of the IRS examination concerning the expense materials issue has not yet begun. It is grand jury documents and transcripts on the expense material issue that the government now seeks to disclose under 6(e). General Motors Corporation and the individuals whom its counsel also represent oppose the entry of a disclosure order.

The practical importance of the issue framed by the government's motion and the opposition thereto may be demonstrated by statistics recited by counsel for the government at oral argument. The grand jury subpoenaed between 200,000 and 300,000 pages of material, which were stamped, numbered, and analyzed by attorneys for the government together with IRS agents assisting them. Approximately 33,000 hours of IRS time were consumed by IRS agents in the performance of this task. Over 100 witnesses were called before the grand jury. The transcripts of their testimony approximate 30,000 pages. The civil examination involves a potential dispute of approximately (according to the government) $300 million in income tax liability. By its motion the government seeks disclosure of transcripts of 28 selected witnesses and a limited but substantial number of subpoenaed documents.

---

1. Why the IRS needs the data for the "collection" of taxes from General Motors Corporation, as distinguished from ascertainment and assessment of taxes, remains unexplained.

2. General Motors Corporation counsel also represent certain employees who were subpoenaed by the grand jury.

■ The government must establish three things to be entitled to the grant of its disclosure motion: First, that the grand jury investigation was conducted to ascertain whether or not violations of criminal law had occurred, and not as a subterfuge to obtain grand jury records for a civil investigation or proceeding, *In re Grand Jury Subpoenas April 1978*, 581 F.2d 1103, 1110 (4th Cir. 1978); second, that disclosure of grand jury records to the IRS would be preliminary to a judicial proceeding, Fed.R. Crim.P. 6(e)(3)(C)(i); and third, that the IRS has a particularized need for the records, *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 2 L.Ed.2d 107 (1958).

I. *Purpose(s) of Grand Jury Investigation*

■ It was established in prior proceedings that one of the objectives of initiating the grand jury investigation was to create a pool of data to be used for civil purposes upon the filing of a 6(e) disclosure motion. The IRS's overwhelming generalized need for the grand jury records disclosed in the present proceedings reaffirms this conclusion. Such need and the government's present frustration at the prospect of not being able to use the fruits of the grand jury investigation for civil purposes are apparent in the following argument distilled from the government's brief:

"The documents and transcripts sought represent the distillation of over nine months of work by government attorneys and agents assisting them in the performance of their duties. Duplication of this effort would similarly require months of effort, a course of action disapproved by the courts. See, e. g., *In Re Grand Jury, Miscellaneous No. 979*, 583 F.2d 123 [128] 131 (5th Cir. 1978). Such duplication of effort, even if attempted, would not be successful. The size of General Motors Corporation and the complexity of the nonproductive materials issue militate against even experienced civil tax investigators without the benefit of the grand jury information having the ability and fortune to identify, seek out, and obtain the specific information contained within the selected materials. Of the many thousands of General Motors employees only a relatively small number could provide testimony relevant to the nonproductive materials issue. Without the names and testimony of individuals whose testimony is pertinent and who have testified before the grand jury, the Internal Revenue Service, would be unable to identify those who could provide relevant testimony and would have to embark upon a futile search. It is untenable to rely upon the adversary, General Motors, to proffer 'representative' individuals to provide the testimony sought. * * * "

The more difficult question is whether the government in good faith also initiated and in fact conducted the grand jury investigation in pursuit of crime. Under our income tax system the principal difference between mere civil liability for taxes in excess of tax disclosed by a taxpayer's return and civil liability coupled with criminal liability is usually the taxpayer's state of mind. Most tax crimes involve the failure to disclose information or the submission of false information. It would be an unusual case in which the government was investigating a potentially large deficiency when it could not make a convincing argument that it wished to investigate the possibility of crime. Although the Court has been presented with no evidence that General Motors Corporation or any of its employees committed a crime, the Court does find from the entire record that IRS personnel investigating civil liability and attorneys for the government conducting the grand jury investigation were in good faith in asserting the possibility that a crime of major dimensions might be uncovered by the grand jury.

It is improbable that the grand jury investigation would have been conducted for criminal purposes alone, but this is not required. The Court has no basis for determining that the grand jury was conducted differently because of the dual motivation.

II. *The Meaning of "Preliminary to a Judicial Proceeding"*

The "preliminary to a judicial proceeding" issue may be approached from several directions.

A. *Analysis of Available Case Law with Respect to 6(e) Motions for IRS Use*

Four cases deal with the disclosure of grand jury materials to the IRS. The only two cases to specifically address the issue of whether an IRS examination is preliminary to a judicial proceeding come to opposing conclusions. Both cases are unreported. In *In the Matter of a Grand Jury Investigation of Andrew Pentileakis*, Misc. No. 79–30 (D.R.I., September 14, 1979), the government sought disclosure of grand jury materials to assist the IRS in tax examinations of the defendants. The government admitted that "there will be no judicial proceeding if there is no conflict between IRS and the taxpayers over taxes due and owing." *Id.* at 4. The court found, however, "that a refined and purist approach to the meaning of 'judicial proceeding' would totally defeat the availability of records for tax investigations in situations as at issue here." *Id.* Without further explaining its reasoning, the court construed the term broadly and allowed the disclosure. In contrast, the case of *In re 1978–1980 Grand Jury Proceedings*, 503 F.Supp. 47 (N.D.Ohio 1980), held that an IRS examination was not preliminary to a judicial proceeding when an identical request as that in *Pentileakis* was made by the government. The court reviewed the nature of the action the IRS is authorized to take under the Code and concluded that its calculation of a deficiency was purely administrative. Whether a deficiency would result from an examination and whether the taxpayer would challenge the deficiency in a subsequent judicial proceeding was determined to be purely speculative. The court found that an IRS examination was not preliminary to or in connection with a judicial proceeding.

A third case, cited by the government, is distinguishable from the case at bar. In *Patrick v. United States*, 524 F.2d 1109 (7th Cir. 1975), the court held that disclosure of grand jury information to the IRS had been permissible as being preliminary to or in connection with judicial proceedings where "the district court could reasonably anticipate that judicial proceedings would arise" out of the IRS action. *Id.* at 1117. *Patrick* is distinguishable because the IRS sought the information for the imposition of a jeopardy assessment when it learned Patrick had failed to file any gambling tax returns after admittedly receiving such income. Jeopardy assessments are drastic, and the court of appeals noted that the district court could reasonably anticipate that judicial proceedings would arise out of the assessment.

A final case involving a request for grand jury materials to aid in an IRS examination assumed, without addressing the issue, that such an examination was preliminary to a judicial proceeding. *In re December 1974 Term Grand Jury Investigation*, 449 F.Supp. 743 (D.Md.1978).

B. *Applicable Law with Respect to Rule 6(e) Motions in Administrative Proceedings in General*

Several cases outside of the IRS context have addressed the issue of whether a particular proceeding or action by an administrative agency is preliminary to a judicial proceeding. While no single case offers a clear-cut test for making this determination, guidelines emerge when the cases are read as a whole.

The first case to address the issue of whether a particular administrative investigation or proceeding was preliminary to a judicial proceeding was *In re Grand Jury Proceedings*, 309 F.2d 440 (3d Cir. 1962) (FTC investigation). This case held that if "[t]here is no judicial proceeding . . . pending and it is *possible that none may result* from the investigation," the investigation is not preliminary to or in connection with a judicial proceeding. *Id.* at 444. (Emphasis added). Subsequent judicial decisions have continued to require varying degrees of certainty that judicial proceedings will follow administrative investigations or proceedings

before releasing grand jury information under Rule 6(e)(3)(C)(i). The common thread of certainty is stated in a variety of ways.

1. *Nature of the relationship between the administrative action and the judicial proceedings.*

■ Several courts have focused on the nature of the relationship between the administrative proceeding in which the grand jury material is used and a future judicial proceeding. In *In the Matter of Disclosure of Testimony Before the Grand Jury*, 580 F.2d 281 (8th Cir. 1978), the court held that if the administrative proceeding is *"designed to culminate"* in a judicial proceeding, it is preliminary to or in connection with a judicial proceeding. *Id.* at 286. (Emphasis added). Another court has held that if the statutory scheme under which the administrative action is taken *clearly contemplates* review of the administrative decision, the administrative decision is preliminary to a judicial proceeding. *In re Special February 1971 Grand Jury*, 490 F.2d 894, 897 (7th Cir. 1973). A third court has re-stated this basic proposition. In *In re Grand Jury Matter*, 495 F.Supp. 127 (E.D. Pa.1980), the court stated that a proceeding is preliminary to a judicial proceeding where "the sequence from what may conventionally be called administrative process to judicial process is a *clear pathway* and one in which the ultimate judicial role is a very substantial one." *Id.* at 132. (Emphasis added). Administrative procedures for disciplining lawyers, removing judges, and for prosecuting violators of criminal laws are preliminary to judicial proceedings within the meaning of Rule 6(e) in that they have been held to satisfy the "designed to culminate," "clearly contemplated," or "clear pathway" test. *See Special February 1971 Grand Jury v. Conlisk*, 490 F.2d 894, 897 (7th Cir. 1973); *Doe v. Rosenberry*, 255 F.2d 118, 120 (2d Cir. 1958); *United States v. Salanitro*, 437 F.Supp. 240, 243 (D.Neb.1977), *aff'd sub nom In the Matter of Disclosure of Testimony Before the Grand Jury*, 580 F.2d 281, 286 (8th Cir. 1978).

■ On the other end of the spectrum, where it is clear from the nature of the administrative proceeding that judicial review is impossible as a matter of law, an administrative request for grand jury materials may never be preliminary to a judicial proceeding. *In re Proceedings Before the Federal Grand Jury for the District of Nevada*, 487 F.Supp. 1098, 1101–02 (D.Nev. 1980) (no judicial review of the gaming commission's decision on a license application).

a. *Opportunity for judicial review of administrative determination in the statutory scheme.*

■ The "designed to culminate," "clearly contemplated," or "clear pathway" test is not satisfied simply because a statutory scheme provides for judicial review of an administrative decision. Two separate qualifications have been imposed on the judicial review of administrative decisions before administrative investigations or proceedings will be considered preliminary to a judicial proceeding.

First, before judicial review of an administrative action may satisfy the judicial proceeding requirement, and the administrative action satisfy the "preliminary to" requirement, the judicial role on review must be a very substantial one, *In re Grand Jury Matter, supra* at 132, and there must be an opportunity for a thorough judicial canvas of the administrative record on issues of law and fact. *Id.* at 133. Conventional judicial review of the administrative proceedings, using the substantial evidence test, is not enough. *Id.*

Second, before an administrative action subject to judicial review may be considered preliminary to a judicial proceeding, there must be an actual case or controversy at the administrative level. Merely demonstrating that an individual has an abstract right to invoke the judicial process to contest an adverse administrative decision does not satisfy the requirements of Rule 6(e) when no adverse determination has in fact been made. *In re J. Ray McDermott & Co., Inc.*, 622 F.2d 166, 171 (5th Cir. 1980); *United*

*States v. Young*, 494 F.Supp. 57, 59 (E.D. Tex.1980).

2. *Factual relationship between subject matter of the administrative investigation or proceeding and a future judicial proceeding.*

■ Some courts have tackled the certainty requirement by addressing the likelihood that a judicial proceeding would flow from an administrative action as a matter of fact.

The case requiring the most certainty that a judicial proceeding follow a preliminary administrative action is *In re December 1974 Term Grand Jury Investigation*, 449 F.Supp. 743 (D.Md.1978), which stated that disclosure under Rule 6(e) for a civil investigation or proceeding must have "some rational connection with a specific . . . contemplated judicial proceeding." *Id.* at 751.

The requirement that a judicial proceeding be specifically contemplated before grand jury material may be released for administrative use may be inferred from *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). In addressing a "particularized need" issue, the Supreme Court stated that "[p]arties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Id.* 441 U.S. at 222, 99 S.Ct. at 1674, 60 L.Ed.2d at 167. "A typical showing of particularized need arises when a litigant seeks to use the grand jury transcript at his trial to impeach a witness, to refresh his recollection, to test his credibility and the like." *Id.* 441 U.S. at 222 n.12, 99 S.Ct. at 1674 n.12, 60 L.Ed.2d at 167 n.12, citing *United States v. Procter & Gamble & Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). In light of *Douglas Oil* it appears to be necessary to focus on the actual use to be made of the grand jury materials in a specifically contemplated lawsuit. Unless a judicial proceeding is specifically contemplated or has discernible shape, there is no proceeding against which the particularized need determination may be made. *See Grand Jury Investigation*, 414 F.Supp. 74 (S.D.N.Y.1976) ("preliminary to" requirement bootstrapped to "particularized need" test).

A less rigorous test for determining whether administrative action is preliminary to a judicial proceeding was employed in *Patrick v. United States*, 542 F.2d 1109 (7th Cir. 1975). In *Patrick* the court determined that administrative action was preliminary to a judicial proceeding if the "district court could *reasonably anticipate* that judicial proceedings would arise." *Id.* at 1117. (Emphasis added).

The converse of the "reasonably anticipated" and "specifically contemplated" tests is found in the cases of *J. Ray McDermott & Co., Inc., supra*, and *United States v. Young, supra*. Both cases imposed an immediacy requirement on subsequent judicial proceedings in order for administrative action to meet the "preliminary to" requirement of Rule 6(e). In *Young* the court held that a judicial proceedings must be "more than a remote potentiality." *Id.* at 60. The *J. Ray McDermott* court stated that the possibility of a judicial proceeding cannot be remote. *J. Ray McDermott, supra* at 171. Whether a judicial proceeding is remote is a fact question.

■ One of the factors courts have considered in determining remoteness is whether the grand jury material is being used in aid of an administrative investigation into possible violations of orders, regulations, or statutes. The "preliminary to" requirement is not satisfied by such an investigation, since it is always possible that the investigation will not uncover evidence of any wrongdoing. *See Grand Jury Proceedings, supra* at 444; *United States v. Bates*, 627 F.2d 349, 351 (D.C.Cir.1980); *Young, supra* at 61; *Grand Jury Investigation, supra* at 76. A judicial proceeding is even more remote where the agency requesting the grand jury material "has not attempted to subpoena any witnesses or compel the production of any documents to carry out

the investigation," preferring instead to "rely on disclosed grand jury materials to save time and money." *J. Ray McDermott, supra* at 171.

Another factor that has been considered in determining the remoteness of a judicial proceeding is whether the administrative agency seeking the grand jury materials has independent enforcement authority or whether it only has the power to certify facts to the Attorney General. *Grand Jury Proceedings, supra* at 444. In *J. Ray McDermott,* however, the court stated that agency enforcement authority alone is not persuasive where the possibility of an enforcement proceeding is remote. *J. Ray McDermott, supra* at 171. *Accord, In re Grand Jury Investigation of Uranium Industry,* 19879 Trade Cases (CCH) § 62,798 (D.D.C.1979, amended August 21, 1979).

C. *The Road from Examination to Litigation, the Likelihood of Litigation, and Application of Case Law Thereto*

■ In the typical case the taxpayer files a return. For one reason or another the IRS selects the return for examination. The examination is a distinct event for a given tax year. Upon determination of the examination, the IRS may compute a proposed deficiency. The taxpayer receives preliminary notice of the proposed deficiency, which triggers a complex, structured appeal procedure which has many turns and possible terminations. When the taxpayer is a large corporation, like General Motors Corporation, the examination and appeals procedure have many adaptations; but in principle it is the same for all. Upon receipt of preliminary notice of the proposed deficiency, the taxpayer has a right to take advantage of an opportunity to negotiate a settlement of the factual and legal issues which have resulted in the proposed deficiency. Upon termination of the structured appeals procedure without a settlement, the IRS issues a ninety-day letter (statutory notice of deficiency) which officially determines the deficiency. After the issuance of the ninety-day letter, cases can be settled, but the settlement procedure and techniques are different.

The issuance of the ninety-day letter triggers the right of the taxpayer to litigate the deficiency in tax court, district court, or the court of claims, although there are further administrative procedures before the taxpayer may take his case to the district court or court of claims. Only the taxpayer can initiate litigation to test the validity of the deficiency because the IRS has no need for litigation. Unless the taxpayer takes the matter to court, the IRS determination of the deficiency is final.

Factually, the part of the investigation dealing with expense materials began, was terminated, and has not been started again. There may or may not be a proposed deficiency flowing from it whether or not the IRS obtains grand jury records. Even if a deficiency is proposed, it is unlikely in fact that litigation will result. The Court so concludes not only because of a history of non-litigation between General Motors Corporation and the IRS, but because General Motors Corporation has definite financial advantages in negotiating a settlement. Finally, in the Court's opinion, litigation involving the expense materials issue would be almost judicially unmanageable, and it would be a public relations disaster from the point of view of General Motors Corporation and the IRS.

Whether the Court examines the issue from the point of view of structure or the facts of the case, the overwhelming weight of authority is that the use for which disclosure is now sought is not preliminary to a judicial proceeding.

D. *Policy Considerations Arising out of the Nature of the Grand Jury Process*

The Court is confident that denial of the motion is appropriate notwithstanding prior construction of the rule by the courts. Neither court rule nor routine judicial supervision can be expected to eliminate grand jury abuse. The principal reason that the grand jury system continued to thrive as a part of a system that is otherwise designed to be protective of people's rights is that

the great majority of attorneys for the government[3] are honorable people who are conscious of the rights of others and the need for self-restraint. In the Court's opinion, the attorneys for the government in this case are such persons. Nonetheless, if the Court were to grant the government's motion in this case, it would be the first chapter in a book that ought not to be written.

---

**3.** Rule 54(c), Federal Rules of Criminal Procedure.