**In the Matter of DISCLOSURE OF TESTIMONY BEFORE the GRAND JURY.**

**Appeal of Anthony S. TROIA.**

**No. 78–1084.**

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1978.

Decided June 30, 1978.

---

6. Minn.Stat.Annot. § 349.03 (1974).

Martin A. Cannon, Matthews & Canon, P. C., Omaha, Neb., for appellant.

Gary P. Bucchino, City Prosecutor, Omaha, Neb., for City of Omaha, appellee; Richard B. Jones and Herbert M. Fitle, Omaha, Neb., on brief.

Stanley P. Gushard, Lincoln, Neb., for appellee, Nebraska State Bar Association.

C. C. Sheldon, Asst. Atty. Gen., Lincoln, Neb., for appellee, Nebraska Commission on Judicial Qualifications.

Before HEANEY and STEPHENSON, Circuit Judges, and WANGELIN,* District Judge.

* The Honorable H. Kenneth Wangelin, United States District Judge for the Eastern District of Missouri, sitting by designation.

STEPHENSON, Circuit Judge.

Anthony S. Troia appeals from an order of the United States District Court[1] for the District of Nebraska, authorizing the release to the City of Omaha, the Council for Discipline of the Nebraska State Bar Association, and the Nebraska Commission on Judicial Qualifications certain specified pages of appellant Troia's federal grand jury testimony.[2] We affirm.

In March 1975 a federal grand jury which had been investigating gambling activities in Omaha and elsewhere in Nebraska for approximately one year returned an indictment against 18 persons. The indictment charged in substance the operation of an illegal gambling business,[3] the use of wire communication facilities to conduct an illegal gambling business,[4] and conspiracy to obstruct enforcement of the Nebraska and Omaha gambling laws.[5] During the course of the investigation, appellant Troia, a former assistant city prosecutor in Omaha from February 1972 until November 1973, testified before the grand jury pursuant to a grant of "use" immunity. Although as a result of the grand jury's investigation no governmental official or employee was indicted, Count II of the indictment stated that some of the defendants did "conspire * * * with Anthony Troia, an Assistant Prosecutor for the City of Omaha, Nebraska, and with other officials and employees, elected, appointed, and otherwise, of the State of Nebraska and its political subdivisions, to obstruct the enforcement of the criminal laws of the State of Nebraska and its political subdivisions * * * intending thereby to facilitate an illegal gambling business." It was further alleged in Count II of the indictment that as a part of the conspiracy, some of the defendants

corruptly endeavor[ed] to impede, defeat and obstruct the enforcement of the laws

of the State of Nebraska and the City of Omaha, by influencing the officials and employees of said State and City, including but not limited to the said Anthony Troia, to refrain from vigorous enforcement against the named defendants of the aforesaid criminal laws of said State and subdivisions, and to provide advance information to the said defendants and their associates concerning any potential enforcement of the aforesaid criminal laws.

On November 19, 1975, appellant Troia asked the district court to expunge from the indictment all references to Troia's name. On March 26, 1976, after considering *United States v. Briggs,* 514 F.2d 794 (5th Cir. 1975), Judge Schatz found that the grand jury had no authority to name an individual as a coconspirator without naming him as a defendant in the indictment, and accordingly ordered Troia's name stricken from Count II of the indictment.

On September 3, 1976, the City of Omaha asked the district court to order disclosure of that portion of the testimony before the grand jury "which bears upon the alleged misconduct of Omaha City officials, past and present." Later the same month, the Council for Discipline of the Nebraska State Bar Association asked the district court "to order the disclosure of that portion of the Grand Jury evidence in which Anthony S. Troia testified and any other evidence in which Anthony S. Troia is named." On September 27, 1976, the Nebraska Commission on Judicial Qualifications asked the district court to disclose that portion of the grand jury testimony "which pertained[ed] to the conduct of any judge of a court having jurisdiction over violations of the law of the State of Nebraska or the ordinances of the City of Omaha, Nebraska."

1. The district court en banc, The Honorable Warren K. Urbom, Chief Judge, The Honorable Robert V. Denney, and The Honorable Albert G. Schatz, issued the order in question.

2. The release of the testimony was stayed by this court pending the outcome of this appeal. In addition, this court expedited the appeal.

3. This charge was alleged to be in violation of 18 U.S.C. §§ 1955 and 2.

4. This charge was alleged to be in violation of 18 U.S.C. §§ 1952 and 2.

5. This charge was alleged to be in violation of 18 U.S.C. § 1511.

A hearing en banc by the district court was held on the applications on September 29, 1976. On April 15, 1977, the district court en banc, in a memorandum of decision, found that the requests of the applicants "are preliminary to or in connection with a judicial proceeding, except to the extent that the City of Omaha asks for information beyond that relating to matters subject to prosecution," and that the three applicants had shown a compelling and particularized need for an in camera examination of the grand jury transcript. The court further stated that having read the entire transcript, which consisted of testimony of more than 100 witnesses, it was persuaded that some limited disclosures were needed to enable the three applicants to make decisions.[6] The court authorized the release to the City of Omaha of "the names and addresses of those persons who gave testimony which could be interpreted as indicating criminal activity by one or more of the city's officers or employees and a general description of the subject matter of the testimony." The court authorized the release to the Council for Discipline of the Nebraska State Bar Association of "the names and addresses of those witnesses who gave testimony which could be interpreted as indicating criminal or professionally unethical activity by one or more lawyers and a general description of the subject matter of the testimony." Finally, the court authorized the release to the Nebraska Commission on Judicial Qualifications of "the names and addresses of the witnesses who gave testimony which could be interpreted as indicating criminal or professionally unethical activity by one or more judges and a general description of the subject matter of the testimony."

In the final two paragraphs of its order dated April 15, 1977, the district court provided as follows:

The contents of the foregoing lists shall be kept as fully confidential as possible by those to whom they are disclosed and shall be used only as a source of information for their own official duties; and

Upon completion of the investigations made possible by this order the statements taken or a summary of them may be delivered to the court for a comparison by the court with testimony given by the same witnesses to the grand jury and for a decision by the court as to whether a disclosure of any further information from or any part of the transcript of the grand jury testimony is necessary.

Following this order, each of the applicants interviewed or attempted to interview the witnesses named on the lists provided to them by the court. Appellant Troia was one of the witnesses interviewed. Subsequently the applicants provided the court with statements taken from each witness and the court compared those statements with the testimony of the witnesses before the grand jury. The court found that "Two of the witnesses refused to make statements, five gave statements which contained material omissions of information given to the grand jury in their testimony, and one furnished a statement substantially at odds with the person's grand jury testimony." Accordingly, the court in an order dated December 12, 1977, authorized the disclosure to the applicants of copies of specified pages from the grand jury transcript which contained testimony either omitted from or significantly at variance with statements made to the applicants, or of persons who refused to give any statement to the applicants. The order enumerated specific persons as representatives of the applicants to whom the copies of the transcript pages would be released. Additionally, the court re-emphasized "That the contents of the foregoing documents and pages of testimony shall be kept as fully

---

6. A member of the Judiciary Committee of the Nebraska Legislature had also asked the court for disclosure of grand jury testimony. The court found that the only persons over which the legislature had impeachment power were civil officers (holders of a constitutional or statewide office). The court stated that there was no evidence in the transcript of any misdemeanor by any civil officer and therefore no necessity shown for disclosure. This portion of the district court's decision has not been appealed.

confidential as possible by those to whom they are disclosed and shall be used only as a source of information for their own official duties." The order finally provided that each of the persons whose testimony was to be disclosed would be notified of that fact. Each witness would be apprised of the applicant or applicants that would receive his testimony as well as the numbers of the pages of the particular transcript. A 15-day period following the date of the order was set aside to allow each witness, if he so desired, to read at the office of the Clerk of the United States District Court those pages of his testimony which were to be disclosed.

Following the December 12, 1977, order appellant Troia asked the district court to grant a new trial. This motion was denied by the district court on January 20, 1978. Troia appeals from the order of December 12, 1977, and the refusal of the district court to grant him a new trial.

■ At the outset we note that in the federal courts there is a long established policy which maintains the secrecy of grand jury proceedings. *United States v. Procter & Gamble Co.,* 356 U.S. 677, 681, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). The traditional policy of secrecy rests on a number of interests which have been characterized as follows:

> the interest of the government against disclosure of its investigation of crime which may forewarn the intended objects of its inquiry or inhibit future witnesses from speaking freely; the interest of a witness against the disclosure of testimony of others which he has had no opportunity to cross-examine or rebut, or of his own testimony on matters which may be irrelevant or where he may have been subjected to prosecutorial browbeating without the protection of counsel; the similar interests of other persons who may have been unfavorably mentioned by grand jury witnesses or in questions of the prosecutor; protection of witnesses against reprisal; and the interests and protection of the grand jurors themselves.

*In re Biaggi,* 478 F.2d 489, 491–92 (2d Cir. 1973) (footnote omitted).

■ The policy of secrecy surrounding grand jury proceedings, however, is not absolute. The Federal Rules of Criminal Procedure provide for several limited disclosures. Fed.R.Crim.P. 6(e), *as amended by Federal Rules of Criminal Procedure Amendments of 1977,* Pub.L. No. 95–78, § 2, 91 Stat. 319, states, in part, that matters occurring before the grand jury may be disclosed "when so directed by the court preliminarily to or in connection with a judicial proceeding." *See Dennis v. United States,* 384 U.S. 855, 869–70, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966).

The Second Circuit has defined "judicial proceeding" in Rule 6(e) as follows:

> [T]he term "judicial proceeding" includes any proceeding determinable by a court, having for its object the compliance of any person, subject to judicial control, with standards imposed upon his conduct in the public interest, even though such compliance is enforced without the procedure applicable to the punishment of crime. An interpretation that should not go at least so far, would not only be in the teeth of the language employed, but would defeat any rational purpose that can be imputed to the Rule.

*Doe v. Rosenberry,* 255 F.2d 118, 120 (2d Cir. 1958) (transcript of testimony before grand jury turned over to Grievance Committee of New York City Bar Association). *See In re Special February 1971 Grand Jury v. Conlisk,* 490 F.2d 894, 897 (7th Cir. 1973) (disclosure of grand jury testimony to police board of inquiry). *But cf. In re Grand Jury Proceedings,* 309 F.2d 440, 443–44 (3d Cir. 1962) (disclosure not allowed to an administrative investigation where a judicial proceeding may not necessarily result from the investigation and the witnesses who appeared before the grand jury, and the documents produced, are available to the investigating commission and subject to administrative subpoena).

In the instant case the district court found that the procedures for prosecuting

violators of criminal laws,[7] disciplining lawyers and removing judges were designed to culminate in a judicial proceeding and, therefore, all the requests of the applicants were "preliminarily to or in connection with a judicial proceeding." We agree.

■ It does not necessarily follow, however, that the pertinent transcript pages of Troia's grand jury testimony should be disclosed to the applicants, as directed by the district court's order of December 12. Even when the literal requirements of Rule 6(e) are met, a court must carefully balance the interest of grand jury secrecy against the goal of a just result in a judicial proceeding. *In re Biaggi, supra,* 478 F.2d at 492. This delicate balancing process has been characterized in several different ways: (1) The burden is on the applicant to show that "a particularized need" exists for the grand jury material which outweighs the policy of secrecy. *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 400, 79 S.Ct. 1237, 3 L.Ed.2d 1322 (1959). (2) The indispensable secrecy "must not be broken except where there is a compelling necessity." *United States v. Procter & Gamble Co., supra,* 356 U.S. at 682, 78 S.Ct. at 986. (3) Disclosure is proper where there is a compelling need for it and such disclosure is required by the ends of justice. *Allis-Chalmers Mfg. Co. v. City of Fort Pierce, Florida,* 323 F.2d 233, 238–42 (5th Cir. 1963). *Cf. Blumenfield v. United States,* 284 F.2d 46, 50 (8th Cir. 1960), *cert. denied,* 365 U.S. 812, 81 S.Ct. 693, 5 L.Ed.2d 692 (1961) (the defendant's motion to inspect the grand jury minutes was properly denied because there was no clear showing of good cause).

■ In the instant case we are persuaded that the compelling necessity for the disclosure of the grand jury testimony and the ends of justice to be secured by the limited disclosure order outweigh the countervailing policy of secrecy. In authorizing the disclosure of the various lists of witnesses' names to the applicants, the district court focused on the compelling need of the information when it stated:

> Little, if any, can be obtained by other means, as things stand now. The only names that have come to any of the applicants, evidently, are those of one lawyer and one municipal judge. The lawyer, Anthony Troia, was named in the indictment, but the indictment went on to assert that the defendants conspired with Troia "and with other officials and employees" of the state and city. The wording can hardly be interpreted to mean Troia and one municipal judge. No other clue to the identity of the other "officials and employees" appears in the indictment. Under those circumstances, none of the applicants is in a position to know whether or not it or he has investigated the people or events being described by the grand jury or has talked to the persons who know the facts about those events. [Footnote omitted.]

It thus appears that the information held by the grand jury could not have been readily acquired by the applicants in any other way.

Following the court's release of the witnesses' names, the applicants conducted or attempted to conduct interviews. After submission of the results of the interviews to the court, the court found that two of the witnesses refused to make statements, five gave statements which contained material omissions of information given to the grand jury in their testimony, and one furnished a statement substantially at odds with the person's grand jury testimony. The court then authorized the limited disclosure of certain specified pages of the grand jury testimony which contained statements either omitted from or significantly at variance with statements made to the applicants, or of persons who refused to give any statement to the applicants. The court directed that the grand jury testimony was to be used only as a source of

---

7. The district court properly noted that the request of the City of Omaha was preliminary to a judicial proceeding, except to the extent that the city had asked for information beyond that relating to matters subject to prosecution. The district court refused to order disclosure of material unrelated to matters subject to prosecution.

information for the applicants' official duties. In addition, the court ordered that the grand jury testimony was to be kept as fully confidential as possible by the applicants.

The applicants argue and we agree that the district court did not abuse its discretion by authorizing the release of a limited portion of Troia's grand jury testimony. In a somewhat different context, but still related to the release and use of grand jury material, our court has stated that "ultimately much must be left to the discretion of the district court." *United States v. Universal Mfg. Co.,* 525 F.2d 808, 812 (8th Cir. 1975). *See Bast v. United States,* 542 F.2d 893, 895 (4th Cir. 1976).

Several factors enter into our decision that the district court has not abused its discretion. First, by the time of the district court's authorization of the disclosures, the grand jury had ceased its gambling investigation. Therefore, there is presently no need to protect against an accused escaping before he is indicted and arrested. There is no risk of tampering with the witnesses. There is no risk of inhibiting the grand jury's investigation and deliberation. In sum, several of the reasons for grand jury secrecy are not operable here. As the Supreme Court has stated, "after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it." *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 234, 60 S.Ct. 811, 849, 84 L.Ed. 1129 (1940). *See U. S. Industries, Inc. v. United States District Court,* 345 F.2d 18, 21–22 (9th Cir.), *cert. denied,* 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62 (1965).

Secondly, the overall purpose of Rule 6(e), which provides for grand jury secrecy and limited disclosure exceptions, is "to facilitate efficient adjudication for the protection of the public." *In re Special February 1971 Grand Jury v. Conlisk, supra,* 490 F.2d at 898. The three applicants in this case seek Troia's grand jury testimony for this purpose. The City of Omaha is concerned with "unnamed city officials" in the indictment, charged with conspiring to obstruct the enforcement of Nebraska's criminal laws. The Council for Discipline is concerned with any professional misconduct by an attorney. The Nebraska Commission on Judicial Qualifications is concerned with any evidence bearing on the qualifications of a judge of a Nebraska court. All three of the applicants' investigations seek to protect the public's welfare.

Third, we are cognizant of the district court's detailed control of the release of the testimony. For example, only a limited number of transcript pages have been authorized by the court to be disclosed. Only designated representatives of each applicant have been authorized to view the transcript pages. The district court has further ordered that the contents of the testimony shall be kept as fully confidential as possible and used by the applicants only as a source of information for their own official duties. Additionally, Troia has been notified as to which pages are to be released to each applicant and has been given an opportunity to review this testimony. Thus, we are persuaded that in authorizing the disclosure, the district court has done so "discretely and limitedly." *United States v. Procter & Gamble Co., supra,* 356 U.S. at 683, 78 S.Ct. 983.

Finally, we are persuaded that the ends of justice require the limited disclosure of Troia's grand jury testimony. *See In re Special February 1971 Grand Jury v. Conlisk, supra,* 490 F.2d at 897–98; *Beatrice Foods Co. v. United States,* 312 F.2d 29, 39 (8th Cir.), *cert. denied,* 373 U.S. 904, 83 S.Ct. 1289, 10 L.Ed.2d 199 (1963); *Doe v. Rosenberry, supra,* 255 F.2d at 120. A federal grand jury has declared the existence of a criminal conspiracy by unnamed "officials and employees * * * of the State * * and its political subdivisions." At stake is the public's faith and trust in their officials and the integrity of the judicial system. We venture no opinion as to what further action should be taken by the applicants. We note that it is just as important to lift the cloud of suspicion which casts its shadow over the innocent as to expose those guilty of wrongdoing. To withhold Troia's

limited testimony under these circumstances could only discourage public respect for the law and the courts.

■ Troia has argued that some of the testimony which he gave before the grand jury and which will be released under the district court's order is not relevant to the central subject matter of the indictment, the illegal gambling business. Troia contends that if any testimony is to be revealed, it should be relevant to the grand jury's investigation of illegal gambling. Troia does not cite, nor does our own independent research reveal, any authority which draws such a distinction under similar circumstances. Certainly a grand jury is "invested with broad investigatorial powers into what may be found to be offenses against federal criminal law." *United States v. Johnson,* 319 U.S. 503, 510, 63 S.Ct. 1233, 1237, 87 L.Ed. 1546 (1943). Additionally, our court has stated that "[r]elevance and materiality necessarily are terms of broader content in their use as to a grand jury investigation than in their use as to the evidence of a trial." *Schwimmer v. United States,* 232 F.2d 855, 862 (8th Cir.), *cert. denied,* 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956). In our opinion, the questions asked Troia before the grand jury did not rise to the level of a general fishing expedition and we refuse Troia's invitation to so limit the disclosure of his testimony.

Although not necessary to our decision, we deem it appropriate to note that it would appear that the federal government's grant of use immunity to Troia protects him from the use of his grand jury testimony in any state prosecution. *Kastigar v. United States,* 406 U.S. 441, 457–58, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *Murphy v. Waterfront Comm'n,* 378 U.S. 52, 79, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); *In re Bianchi,* 542 F.2d 98, 101 (1st Cir. 1976). At least one circuit, though, has held that state bar disciplinary proceedings are not "criminal" for purposes of requiring the exclusion of testimony compelled under a grant of immunity. *In re Daley,* 549 F.2d 469 (7th Cir. 1977), *cert. denied,* 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977). These issues, however, are not before us and their resolution must wait for another day.

We are satisfied that the district court did not abuse its discretion in granting the limited disclosure of Troia's grand jury testimony, subject to the detailed controls as to distribution established by the district court.

Affirmed.