932 F.2d 481
 59 USLW 2692
 In re GRAND JURY 89-4-72.
JOHN DOE # 1, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee,
Michigan Judicial Tenure Commission, Michigan Attorney
Grievance Commission, Movants-Appellees.
 No. 90-2219.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 11, 1990.
Decided April 26, 1991.
Rehearing and Rehearing En Banc Denied
June 20, 1991.
 
 Richard E. Shaw, Lopatin, Miller, Freedman, Bluestone, Erlich & Rosen, Lee R. Franklin (argued), Detroit, Mich., for John Doe # 1.
 Alan Gershal, Office of the U.S. Atty., Detroit, Mich., for the U.S.
 Joseph F. Regnier, Michigan Judicial Tenure Com'n, Detroit, Mich., for Michigan Judicial Tenure Com'n.
 Jane Shallal, Philip J. Thomas (argued), Michigan Atty. Grievance Com'n, Detroit, Mich., for State of Mich. Atty. Grievance Com'n.
 Before MARTIN and MILBURN, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 This matter comes before the court on a motion to stay an order granting disclosure of grand jury material gathered in the investigation of a state judge alleged to have engaged in inappropriate dealings with attorneys who practice before him. The sole issue on appeal is whether the district court properly granted the Michigan Attorney Grievance Commission's request for disclosure of all evidence presented to the grand jury that might relate to possible criminal or unethical conduct by a Michigan attorney who, for lack of a better term, we shall refer to as Doe # 1. Because the district court erred in concluding that disclosure to the Commission was "preliminary to or in connection with a judicial proceeding" and in determining that the Commission had demonstrated a particularized need for the evidence requested, we reverse.
 
 
 2
 This case arises from a federal grand jury convened in Michigan to investigate charges that a state judge has accepted items of value from attorneys in exchange for the favorable consideration of pending cases. Following the United States Attorney's submission of proof, the grand jury found insufficient evidence to indict. Despite the presumed secrecy of the proceedings, information which raised serious questions as to whether a particular judge violated the canons and ethical standards governing judicial behavior was furnished to the Judicial Tenure Commission. The Michigan Attorney Grievance Commission received similar information regarding potential violations of the Michigan Rules of Professional Conduct and Ethical Standards by certain attorneys implicated in the investigation. As a result, both the Judicial Tenure Commission and the Attorney Grievance Commission requested the United States District Court for the Eastern District of Michigan to order the release of grand jury evidence, including recorded testimony, exhibits, and documents, to allow each to pursue an independent investigation. The United States filed a response to the Grievance Commission's request stating that it supported disclosure because the Commission's need for the information was "greater than the need for absolute secrecy."
 
 
 3
 On October 26, 1990, the district court issued a written memorandum opinion and order granting the Grievance Commission's request. Relying on In the Matter of Electronic Surveillance, 596 F.Supp. 991, 999 (E.D.Mich.1984), the court concluded that disclosure was permissible under Rule 6(e)(3)(C)(i) of Fed.R.Crim.P. because an investigation by the Grievance Commission was a preliminary to a "judicial proceeding" within the meaning of the 6(e)(3), and because the Commission had demonstrated a particularized need for disclosure. The court granted the Judicial Tenure Commission's request for disclosure on similar grounds. Doe # 1 filed a motion to stay the disclosure order pending appeal; that motion was granted and notice of appeal was subsequently filed with this court. No notice of appeal has been filled by any individual under investigation by the Judicial Tenure Commission. Accordingly, only the disclosure request submitted by the Grievance Commission is currently before us.
 
 
 4
 Because the grand jury fills the unique institutional role of both "determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions[,]" it is vested with extraordinary investigatory powers not otherwise constitutionally permissible outside this setting. In the Matter of Grand Jury Investigation (Detroit Police Department Special Cash Fund), 922 F.2d 1266, 1269 (6th Cir.1991) (quoting Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) (footnote omitted)). To ensure the grand jury access to full and frank disclosures, and to protect the innocent from grand jury abuse, the principle of grand jury secrecy has long been deeply ingrained in American legal jurisprudence. United States v. Sells Engineering, Inc., 463 U.S. 418, 424, 103 S.Ct. 3133, 3138, 77 L.Ed.2d 743 (1983); United States v. Procter & Gamble Co., 356 U.S. 677, 681, 78 S.Ct. 983, 985, 2 L.Ed.2d 1077 (1958); Federal Deposit Insurance Corp. v. Ernst & Whinney, 921 F.2d 83, 86 (6th Cir.1990). As the Supreme Court has stated, "[i]n the absence of a clear indication in a statute or Rule, we must always be reluctant to conclude that a breach of this secrecy has been authorized." Sells Engineering, 463 U.S. at 425, 103 S.Ct. at 3138.
 
 
 5
 Rule 6(e)(2) of Fed.R.Crim.P. codifies the common law rule prohibiting the disclosure of any matters occurring before the grand jury. Fed.R.Crim.P. 6, note to subdivision (e); Sells Engineering, 463 U.S. at 425, 103 S.Ct. at 3138. That secrecy, however, is not absolute. Rule 6(e)(3) authorizes five specific exceptions to the general rule of secrecy; only one, Rule 6(e)(3)(C)(i), is germane to this controversy. Rule 6(e)(3)(C)(i) establishes a two-step standard permitting disclosure of grand jury material otherwise prohibited to a party who demonstrates that (1) the disclosure is sought "preliminarily to or in connection with a judicial proceeding[,]" and (2) a compelling need for disclosure exists which will overcome the general presumption in favor of grand jury secrecy.
 
 
 6
 The restriction on the nature of the proceeding sufficient to trigger disclosure qualifies the kind of need that must be shown, judicial need; the constraint as to the extent of need required for disclosure quantifies that degree of need, a compelling need. Sells Engineering, 463 U.S. at 424, 103 S.Ct. at 3138. The former is a legislative determination reflecting
 
 
 7
 the judgment that not every beneficial purpose, or even every valid governmental purpose, is an appropriate reason for breaching grand jury secrecy.... The focus is on the actual use to be made of the material. If the primary purpose of disclosure is not to assist in preparation or conduct of a judicial proceeding, disclosure under (C)(i) is not permitted.
 
 
 8
 United States v. Baggot, 463 U.S. 476, 480, 103 S.Ct. 3164, 3167, 77 L.Ed.2d 785 (1983). The latter is a judicial interpretation that the Rule itself requires more than minimal justification before a breach of secrecy will be permitted even to aid a judicial proceeding. See Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979). Both elements are related, but independent, prerequisites to (C)(i) disclosure. Baggot, 463 U.S. at 480, 103 S.Ct. at 3167. We shall address each separately.I. NATURE OF THE COMMISSION PROCEEDINGS
 
 
 9
 The Grievance Commission argues that Michigan's attorney discipline proceedings are judicial in nature so that disclosure to the Commission would be preliminary to a judicial proceeding. Doe # 1 argues that disclosure to the Commission is improper because the Michigan disciplinary proceedings are not themselves judicial in nature nor do they provide for a sufficient judicial role to be considered preliminary to a judicial proceeding. Doe # 1 contends that the statutory structure providing for attorney discipline reveals the Commission's investigation to be preliminary to an administrative proceeding, thus excluding it from the secrecy exception provided by Rule 6(e)(3)(C)(i). See, e.g., In re Grand Jury Proceedings, 309 F.2d 440, 443 (3d Cir.1962) (Federal Trade Commission not entitled to grand jury evidence because request was preliminary to an administrative rather than judicial proceeding). We must therefore consider the "knotty question of what, if any, sorts of proceedings other than garden-variety civil actions or criminal prosecutions might qualify as judicial proceedings under (C)(i)." Baggot, 463 U.S. at 479, n. 2, 103 S.Ct. at 3166, n. 2 (citations omitted).
 
 
 10
 The most commonly relied upon definition of a (C)(i) "judicial proceeding" is contained in Judge Learned Hand's opinion in Doe v. Rosenberry, 255 F.2d 118, 120 (2d Cir.1958). See, e.g., United States v. Bates, 627 F.2d 349 (D.C.Cir.1980); In re J. Ray McDermott & Co., Inc., 622 F.2d 166 (5th Cir.1980); Special February 1971 Grand Jury v. Conlisk, 490 F.2d 894 (7th Cir.1973). The issue presented in Doe v. Rosenberry was whether disclosure of grand jury information to the Grievance Committee of the New York City Bar Association for a disciplinary investigation was permissible under Rule 6(e). Doe sought to compel the bar association to return evidence obtained during a grand jury investigation. He argued that because attorney disciplinary proceedings are neither strictly civil nor criminal in nature, they are quasi-judicial and therefore outside the scope of 6(e)(3)(C)(i). The Second Circuit agreed that the action was quasi-judicial because it could not properly be categorized as either criminal or civil. However, the court found the New York disciplinary procedures to be "judicial" in nature within the meaning of the Rule because they were presented before the Appellate Division of the New York Supreme Court. Id. at 119. Judge Hand felt the term "judicial proceeding" should not be read to preclude proceedings that were not in the ordinary course of a court's business. Rather, the Rule should be read to include
 
 
 11
 any proceeding determinable by a court, having for its object the compliance of any person, subject to judicial control, with standards imposed upon his conduct in the public interest, even though such compliance is enforced without the procedures applicable to the punishment of crime.
 
 
 12
 Doe v. Rosenberry, 255 F.2d at 120.
 
 
 13
 Although commentators have criticized the Doe v. Rosenberry definition as little more than an exercise in semantics because it leaves the requirements for what constitutes a "court" and "subject to judicial control" unresolved, we find the gloss placed on Judge Hand's analysis by succeeding courts sufficient to adequately address the issue before us. Note, Disclosure of Grand Jury Materials to Foreign Authorities Under Federal Rule of Criminal Procedure 6(e), 70 Va.L.Rev. 1623, 1639 n. 84 (1984). Though Judge Hand spoke to quasi-judicial proceedings with regard to the nature of the action not its forum, courts interpreting Doe v. Rosenberry have used the term quasi-judicial in reaching differing conclusions as to the judicial role required to qualify certain agency actions as preliminary to a judicial proceeding. Of particular concern has been whether the potential for judicial review of agency action would, in and of itself, establish that disclosure was preliminary to a judicial proceeding. Note, Federal Agency Access to Grand Jury Transcripts Under Rule 6(e), 80 Mich.L.Rev. 1665, 1670 (1982). That issue was settled by United States v. Baggot, 463 U.S. at 480, 103 S.Ct. at 3167, where the Supreme Court noted, "[t]he fact that judicial redress may be sought, without more, does not mean that the Government's action is 'preliminar[y] to a judicial proceeding.' "
 
 
 14
 While Baggot settled perhaps the most fundamental controversy regarding 6(e)(3)(C)(i) disclosure, the issue remains open as to the degree of judicial involvement required to establish that disclosure of grand jury information is directed preliminarily to a judicial proceeding. Other circuits have suggested that disclosure of grand jury materials to an administrative body, such as a bar disciplinary committee, may be considered preliminary to a judicial proceeding where a significant judicial role exists in the operation of the regulatory/statutory scheme. In the Matter of Federal Grand Jury Proceedings (United States v. Doe), 760 F.2d 436 (2d Cir.1985); In re Barker, Wolf v. Oregon State Bar, 741 F.2d 250 (9th Cir.1984); United States v. Bates, 627 F.2d at 349; In re J. McDermott & Co., Inc., 622 F.2d at 166; Bradley v. Fairfax, 634 F.2d 1126 (8th Cir.1980); In the Matter of Disclosure of Testimony Before the Grand Jury, 580 F.2d 281 (8th Cir.1978). We agree with these cases, but find the attorney discipline mechanism employed by the State of Michigan to fall outside the scope of Rule 6(e)(3)(C)(i) because the disciplinary proceedings are neither carried out before a judicial body, nor subject to sufficient judicial control.
 
 
 15
 Unlike many states in which bar disciplinary proceedings are heard before a judicial tribunal, the Michigan Supreme Court has chosen to totally delegate its state constitutional authority to discipline attorneys to the Michigan Attorney Discipline Board. M.C.R. 9.110(A) & (D)(5). The Attorney Discipline Board is a privately funded agency comprised of two attorneys appointed by the state bar board of commissioners, and two laypersons and three attorneys appointed by the Supreme Court. M.C.R. 9.105; 9.110(B). The primary responsibility of the Board is to investigate and discipline attorneys suspected of misconduct. M.C.R. 9.105.
 
 
 16
 The Board's investigatory needs are served by the Attorney Grievance Commission which supervises and approves inquiries into alleged attorney malfeasance. M.C.R. 9.108(D)(2); 9.109(B)(5). The Commission is appointed in the same manner as the Board, and in turn, appoints one of its attorney members to the position of Grievance Administrator. The Grievance Administrator is the individual upon whom the burden of investigation finally rests. M.C.R. 9.109(B)(5). The Grievance Administrator may ask the Commission to exercise its subpoena powers to facilitate his inquiry; persons failing to comply with a Commission subpoena may be held in contempt. M.C.R. 9.114(C).
 
 
 17
 Where the Grievance Administrator's investigation has yielded probable cause to suspect misconduct, the Commission may authorize prosecution before the Board. M.C.R. 9.109(B)(6). That prosecution may culminate in a disciplinary hearing before a three attorney panel appointed by the Board. M.C.R. 9.111. The actions of that panel are reviewable by the full Board. M.C.R. 9.110(D)(5). The Board's decision may be reviewed at the discretion of the Michigan Supreme Court. M.C.R. 9.122(A). There is no statutory authority for this review under Michigan law, and one Michigan federal district judge has found that leave to appeal is rarely granted. Electronic Surveillance, 596 F.Supp. at 999. That finding has not been disputed in the present case.
 
 
 18
 This administrative structure of the Michigan disciplinary scheme certainly distinguishes this case from others that have permitted the disclosure of grand jury evidence to state bar officials investigating complaints of attorney malfeasance. In the Matter of Federal Grand Jury Proceedings (United States v. Doe), 760 F.2d at 436; In re Barker, 741 F.2d at 250; United States v. Sobotka, 623 F.2d 764 (2d Cir.1980); In the Matter of Disclosure of Testimony Before the Grand Jury, 580 F.2d at 281. In each of these cases, the judicial role in the proceedings was so substantial and clearly defined by state statute as to be properly characterized as preliminary to a judicial proceeding. In the case before us, the Michigan Supreme Court itself has said these "disciplinary procedures are, prior to final review by this Court, administrative and quasi-judicial in nature, rather than primarily judicial." State Bar v. Estes, 390 Mich. 585, 592, 212 N.W.2d 903, 905 (1973).
 
 
 19
 For example, In the Matter of Federal Grand Jury Proceedings (United States v. Doe), 760 F.2d at 436, the Second Circuit reconsidered its conclusion in Doe v. Rosenberry, 255 F.2d at 118, that disclosure of grand jury evidence to New York bar investigators was permissible under 6(e)(3)(C)(i) in light of Baggot, 463 U.S. at 480, 103 S.Ct. at 3167. The court concluded that Baggot did not affect its prior holdings because the New York disciplinary investigations offered more than simple judicial review of agency actions; those investigations are ordered by, and upon a showing of probable cause, heard by the Appellate Division of the New York Supreme Court. See also Sobotka, 623 F.2d at 764 (disclosure of grand jury material to Connecticut Grievance Committee permissible where disciplinary proceedings are carried out before Connecticut Superior Court).
 
 
 20
 In In the Matter of Disclosure of Testimony Before the Grand Jury, 580 F.2d at 281, the Eighth Circuit upheld a district court's ruling that disclosure of grand jury materials to the Counsel on Discipline of the Nebraska State Bar Association was authorized as preliminary to a judicial proceeding. See United States v. Salanitro, 437 F.Supp. 240 (Neb.1977), aff'd sub nom. In the Matter of Disclosure of Testimony Before the Grand Jury, 580 F.2d at 281. The court paid particular attention to the operation of the Nebraska disciplinary statute. Under Nebraska law, allegations of misconduct are investigated by the Counsel to the bar association. If evidence warrants, a hearing is held before the Nebraska Supreme Court which itself determines whether an attorney is guilty of misconduct, and what penalty, if any, should be imposed. Salanitro, 437 F.Supp. at 243. The court concluded these procedures for "disciplining attorneys ... were designed to culminate in a judicial proceeding and, therefore, all the requests of the applicants were 'preliminarily to or in connection with a judicial proceeding.' " In the Matter of Disclosure of Testimony Before the Grand Jury, 580 F.2d at 286.
 
 
 21
 Despite the direct involvement of the Nebraska Supreme Court in any actual disciplinary hearing, another panel of the Eighth Circuit later questioned whether the holding of In the Matter of Disclosure of Testimony Before the Grand Jury, was overly expansive. In refusing to extend the logic of In the Matter of Disclosure of Testimony Before the Grand Jury to parole revocation hearings which might be subject to judicial review upon a proper showing, the court stated, "[s]uch a reading of the Rule invites indiscriminate disclosure of grand jury materials to a wide variety of agencies whose decisions are subject to judicial review." Bradley v. Fairfax, 634 F.2d at 1129. We find both In the Matter of Disclosure of Testimony Before the Grand Jury and Bradley to be fully consistent with our present holding. We agree with the Bradley court that any disclosure predicated simply on the automatic review of agency action by a judicial body is unwarranted under the Rule. However, we agree that In the Matter of Disclosure of Testimony Before the Grand Jury is consistent with the Supreme Court's later decision in Baggot because the disciplinary scheme reviewed evidenced such a substantial judicial involvement as to support a finding that disclosure was directed preliminarily to a judicial proceeding.
 
 
 22
 The Ninth Circuit addressed the 6(e)(3)(C)(i) disclosure issue in In re Barker, 741 F.2d at 251. In that case, Oregon bar officials sought grand jury materials gathered in the investigation of the investment activities of two large regional banks which might implicate an Oregon attorney. Under the Oregon attorney discipline statute, formal charges of misconduct are heard before a Disciplinary Board appointed by the Supreme Court of Oregon. Ore.Rev.Stat. ch. 9.534(1). The Oregon Supreme Court Administrator is advised of the Board's decision by written opinion. Should the Board find the accused has not committed any misconduct, or if the imposed penalty does not exceed 60 days of suspension from the practice of law, either party may request automatic de novo review by the supreme court. Id. at 9.536(1). Should disbarment, or a suspension of more than 60 days, result, de novo review by the supreme court is carried out without request. Id. at 9.536(2). Stating that, "the only way for the Oregon State Bar to institute such proceedings is to resort to the quasi-judicial proceedings before the Supreme Court of Oregon. The primary purpose of the disclosure sought is to assist in the preparation of the proceedings before the Oregon Supreme Court[,]" the court determined that the provisions providing for automatic de novo judicial review satisfied the requirements of (C)(i) as interpreted by Baggot.
 
 
 23
 In the case before us, the district court relied on In the Matter of Electronic Surveillance, 596 F.Supp. at 999, to find the attorney discipline procedures in Michigan to be sufficiently analogous to those cases previously mentioned to permit the disclosure of federal grand jury materials to state bar officials. Under past precedent in our circuit this decision would have been entitled to great weight and deference because there is no Michigan case interpreting the nature of the disciplinary procedure except the reference to the quasi-judicial aspects of the proceedings in State Bar v. Estes, supra. In such circumstances we would have been bound to give to the district court great deference and would not have been in a position to review unless there was a clear error of law. See, e.g., Martin v. Joseph Harris Co. Inc., 767 F.2d 296, 299 (6th Cir.1985), School District for the City of Royal Oak v. Continental Casualty Co., 912 F.2d 844, 845 (6th Cir.1990). However, these cases and others were overruled in Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). Appellate deference to the district court's state law determination was found to be inconsistent with Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We now consider these questions on appellate review independent of the district court's holding.
 
 
 24
 On the record here we find the Michigan attorney discipline procedures do not evidence a substantial judicial role in the proceedings. We are not prepared to call an administrative hearing before a panel of private attorneys and laypersons, funded by a private organization, with limited discretionary review to the Michigan Supreme Court, a "judicial proceeding" within the meaning of Rule 6(e)(3)(C)(i). That the disciplinary proceedings are sanctioned under the authority of the state supreme court is irrelevant. No amount of artificial judicial procedure or due process can transform such an administrative panel into a judicial body within the meaning of the Rule. "The Commission does not seek the grand jury evidence for use in any judicial proceeding; it seeks a private disclosure in aid of an administrative investigation into possible violations.... The investigation undertaken is preliminary to and in connection with the ex parte administrative proceeding contemplated by the statute; it is not preliminary to or in connection with a judicial proceeding with the intendment of the rule." In re Grand Jury Proceedings, 309 F.2d at 443-44 (denying Federal Trade Commission's request for disclosure of grand jury materials to facilitate an anti-trust investigation). Having chosen a non-judicial forum for attorney discipline, Michigan can not now complain when access to the federal grand jury is denied. Accordingly, we find In the Matter of Electronic Surveillance, 596 F.Supp. at 991, to be incorrectly decided.
 
 
 25
 Were the Michigan Supreme Court to grant mandatory review in each case so as to provide an independent inquiry into each case of discipline or disbarment, we might be faced with a different situation. However, such is not case here. That is not to say that an appeal as of right, in and of itself, would transform this administrative hearing into a judicial proceeding, particularly in light of Baggot ; for we agree with the Eighth Circuit that predicating disclosure solely upon statutory provisions providing for automatic review risks the exposure of grand jury materials to a number of administrative agencies not contemplated under Rule 6(e)(3)(C)(i). Bradley v. Fairfax, 634 F.2d at 1129, n. 6.
 
 
 26
 The Commission argues that disclosure is proper despite the administrative nature of the contemplated disciplinary proceedings because of the public interest in the integrity of the state bar. Though dicta in some cases suggests that attorney discipline proceedings are themselves judicial in nature by virtue of the special relationship between the court and those attorneys privileged to practice before it, United States v. Bates, 627 F.2d at 351 (denying disclosure of grand jury material to the Federal Maritime Commission); In re J. Ray McDermott & Co., Inc., 622 F.2d at 170 (denying disclosure of grand jury material to the Federal Energy Regulatory Commission), "[c]ertainly the notion that bar disciplinary committee investigations are any more judicial proceedings than are agency investigations appears to be little more than a convenient legal fiction." Note, 80 Mich.L.Rev. at 1670, n. 22. As noble as the regulation of, and the protection of the public generally from, those who are unscrupulous and also practice law may be, the federal grand jury cannot be the vehicle of investigation where that regulation is non-judicial. The constitutional protection afforded by the secrecy of the grand jury is far more important, particularly in a case such as this one where the Commission holds the unused power to subpoena witnesses to gather its own evidence to protect the public.
 
 
 27
 The Commission cites Special February 1971 Grand Jury v. Conlisk, 490 F.2d 894 (7th Cir.1973) for the proposition that certain administrative hearings in the public interest may rise to the level of a judicial proceeding where the concepts of fundamental fairness are followed. In Conlisk, the court found the disclosure of grand jury materials to the Superintendent of Police in an investigation of the Chicago police department was ordered preliminarily to a judicial proceeding. Id. at 897. We find the Commission's argument to be in error as the Conlisk court clearly articulated the grounds for its decision: "The statutory scheme involved here plainly contemplates judicial review of the board's findings, and we must therefore conclude, in answering the first question, that the police board hearing is 'preliminary' to judicial review." Id.; see also Note, 70 Va.L.Rev. at 1639. Although we question the validity of the Conlisk reasoning following Baggot, we note that the court's statements do not support the Commission's argument.
 
 
 28
 This case presents the tension between the pressure to insure that those who practice law are appropriately regulated and the need to adequately protect the secrecy of grand jury proceedings. States may choose to regulate the practice of law in basically any manner they wish. They may regulate that practice by action of a judicial body or they may use an administrative body as Michigan has done. Within the borders of the state, that regulation is, of course, appropriate so long as no federal constitutional rights are abridged. However, having chosen an administrative scheme to regulate the practice of law, Michigan has curtailed its access to grand jury materials because as an administrative body with only discretionary review by the state supreme court, the Commission falls within the same category as do all administrative agencies which are denied access to federal grand jury material under Rule 6(e)(3)(C)(i), even though the Commission's purview includes the regulation of the right to practice law.
 
 
 29
 We are not unaware of those commentators who have urged the courts to make grand jury materials more accessible to administrative agencies in an effort to reduce duplicative investigations. See, e.g., Note, 80 Mich.L.Rev. at 1672. However, Rule 6(e)(3)(C)(i) is not a rule of convenience; without an unambiguous statement to the contrary from Congress, we cannot, and must not, breach grand jury secrecy for any purpose other than those embodied by the Rule. Accordingly, we find disclosure to the Commission is not ordered "preliminarily to or in connection with a judicial proceeding" within the limited secrecy exception provided by Rule 6(e)(3)(C)(i).
 
 II. PARTICULARIZED NEED
 
 30
 Because we find that disclosure to the commission is not preliminary to a judicial proceeding, we need not address the second prong of Rule 6(e)(3)(C)(i) disclosure, particularized need. We do note, however, that the district court's conclusion as to the degree of need the Commission is required to show is inconsistent with our recent holding in Federal Deposit Insurance Corp. v. Ernst & Whinney, 921 F.2d at 86. The district court predicated the disclosure of all information that might possibly relate to potential attorney misconduct on the ground that the Commission must be permitted to
 
 
 31
 seek out and then discipline[ ] any attorneys who have violated the Michigan Rules of Professional Conduct. Allegations of significant misconduct on behalf of judges and/or lawyers of this state go directly to the integrity of the courts and the bar. The need to thoroughly investigate these accusations and thus restore public confidence in public officials is sufficient to satisfy the requirement of a compelling and particularized need. Furthermore, this Court finds that the requests for disclosure are as narrow and structured as possible, since the requests only deal with material that concerns potential wrongdoing by a judge and attorneys.
 
 
 32
 In light of these factors, this Court finds that the need for disclosure in this instance out-weighs the need for continued secrecy.
 
 
 33
 Such a finding is insufficient. In Ernst & Whinney we explicitly stated that the burden of establishing particularized need is necessarily heavy in order to protect the secrecy of the grand jury.
 
 
 34
 The fact that the grand jury documents are relevant or that production of them by the [Commission] would expedite civil discovery or reduce expenses for the parties is insufficient to show particularized need when the evidence can be obtained through ordinary discovery, i.e., subpoenaing the documents from other sources, or pursuing other routine avenues of investigation.
 
 
 35
 Ernst & Whinney, 921 F.2d at 86-87 (citations omitted). Though we agree that the public holds a substantial interest in the integrity of the state bar, that interest per se will not justify the disclosure ordered here. See Sobotka, 623 F.2d at 768. Our holding in Ernst & Whinney requires a movant to demonstrate the need for disclosure with particularity so that the secrecy of the proceedings may be lifted only to the extent necessary to fulfill a narrowly tailored and compelling need. Ernst & Whinney, 921 F.2d at 86.
 
 
 36
 Accordingly, the judgment of the district court is REVERSED and REMANDED for further action not inconsistent with this opinion.
 
 WELLFORD, Senior Circuit Judge, concurring:
 
 37
 I am in accord with most of Judge Martin's carefully reasoned opinion in this case. I find it unnecessary to the decision in this case, however, to discuss an issue not before us. The opinion takes great pains to point out that "[t]here is no statutory authority for [automatic] review under Michigan law ... [and] leave to appeal is rarely granted."[1] Further, the majority observes:
 
 
 38
 This administrative structure of the Michigan disciplinary scheme certainly distinguishes this case from others that have permitted the disclosure of grand jury evidence to state bar officials investigating complaints of attorney [or judicial] misfeasance.
 
 
 39
 In light of this emphasis that because Michigan court review of attorney or judicial disciplinary matters is discretionary and "rare" that Rule 6(e)(3)(C)(i) of Fed.R.Crim.P. disclosure is not to be invoked, I would eliminate any reference to what purports to be the principle enunciated in Bradley v. Fairfax, 634 F.2d 1126, 1129 (8th Cir.1980), "that any disclosure predicated simply on the automatic review of agency action by a judicial body is unwarranted." (Emphasis added).
 
 
 40
 Bradley involved action of the United State Parole Commission, one entirely different from the matter with which we are here concerned, and it conceded that "[t]his Circuit [Eighth Circuit] and others have on occasion read the phrase 'judicial proceeding' expansively." Id. at 1129. I am not sure that Bradley stands for the principle for which it is cited, and, as stated, that proposition is dictum in this case. The Eighth Circuit, in an earlier opinion, held by the majority to be "fully consistent" with its holding, allowed disclosure under the rule in question of grand jury material related to investigation of a Nebraska prosecuting attorney and judges. See Matter of Disclosure of Testimony, Etc., 580 F.2d 281 (8th Cir.1978). I am satisfied that an appeal of right to the Michigan courts, if the law provided for it, would make disclosure appropriate as being "in connection with a judicial proceeding."
 
 
 41
 The en banc district court in Nebraska permitted disclosure of limited grand jury material and "the names and addresses of those persons who gave testimony" before a grand jury concerning wrongdoing of the attorney and judges involved by the Nebraska investigatory body. This action was affirmed in Matter of Disclosure of Testimony, Etc., supra, which provided that this list of names and addresses be kept "as fully confidential as possible" by the investigatory body. I would similarly be disposed in this case to permit such a list of names and addresses of grand jury witnesses (but not their testimony) to be furnished the Michigan Attorney Grievance Commission on a strictly confidential basis. Further, if a particularized need for grand jury testimony of a witness or witnesses were later established by that body, I would make it clear that our present decision not to permit disclosure would constitute no bar to a future application after unsuccessfully "pursuing other routine avenues of investigation."[2] Federal Deposit Ins. Corp. v. Ernst & Whinney, 921 F.2d 83, 87 (6th Cir.1990), citing United States v. Sells Engineering, 463 U.S. 418, 431, 103 S.Ct. 3133, 3141, 77 L.Ed.2d 743 (1983).
 
 
 
 [1]
 Actually the district court stated that "the Michigan Supreme Court seldom grants leave to appeal the Board's decisions." 596 F.Supp. 991, 999 (E.D.Mich.1984). That was in 1984 and we should not presume that because the court did not frequently grant review in disciplinary proceedings in 1984 it still did not do so but on seldom occasions in 1990
 
 
 [2]
 "Under the Michigan Constitution, the Michigan Supreme Court is charged with the exclusive responsibility of supervising Michigan lawyers." Michigan Lawyer Discipline, Journal of Urban Law (U. of Detroit), Vol. 61, p. 4 (1983) (emphasis added). "The Grievance Administrator, the complainant, or the respondent may seek leave to appeal to the Supreme Court." Id. at 21