**UNITED STATES of America, Plaintiff,**

v.

**Carolyn GRAHAM, Defendant.**

No. CR–3–01–099(01).

United States District Court,
S.D. Ohio,
Western Division.

Nov. 7, 2002.

———

John Philip Feldmeier, Cincinnati, OH, Martin Stanley Pinales, Sirkin, Pinales & Schwartz, Howard M. Srebnick, Black, Srebnick & Kornspan, PA, Miami, FL, for defendant.

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION FOR PRODUCTION OR JUDICIAL REVIEW OF GRAND JURY TRANSCRIPTS (DOC. # 108).

RICE, Chief District Judge.

Defendant Carolyn Graham ("Defendant" or "Graham") is charged in the Superseding Indictment (Doc. # 58) with conspiring to distribute and to possess with intent to distribute more than five kilograms of cocaine, more than fifty grams of cocaine base and heroin, in violation of 21 U.S.C. § 846; a second conspiracy to possess with intent to distribute and to distribute more than five kilograms of cocaine, also in violation of § 846; unlawful use of a communication facility, in violation of 21 U.S.C. § 843; possessing with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 841; conspiracy to launder money, in violation of 18 U.S.C. § 1956; and a substantive count of money laundering, also in violation of § 1956.

This case is now before the Court on the Defendant's Motion for Production or Judicial Review of Grand Jury Transcripts (Doc. # 108). Defendant bases this motion on her assertion that her indictment may have resulted from flawed Grand Jury proceedings. In particular, Defendant relies upon an affidavit executed by FBI Special Agent Robert Brawner ("Brawner"), one of the law enforcement officials involved in the investigation which led to this prosecution. In that affidavit, Brawner sets forth details about the Government's investigation into the alleged theft of 48 kilograms of cocaine, allegedly belonging to Joe Wright, from Graham's residence. According to Brawner's affidavit, the robbery was masterminded by Arvin Ridley, and

Graham and an individual named Sentell Smith were also involved. To support his motion, Graham relies on a number of sentences from one paragraph in Brawner's affidavit. In order to place those sentences in perspective, the Court quotes a greater portion of that paragraph, underlining the sentences upon which Defendant relies:

> Follow-up investigation resulted in information being received from Sentell Smith on April 11 [2001], April 12, 2001, and May 8, 2001. Smith admitted that he was recruited by Ridley to perform a theft of two items of luggage Smith believed contained U.S. currency. This theft occurred on the evening of April 6, 2001[,] after approximately 10:45 p.m. at a residence he pointed out to Agents as 19 Solomon Street, Trotwood, Ohio. Smith stated that a female occupant of this residence assisted with the theft of the cocaine. Smith identified a photograph of Carolyn Graham as the female occupant of the residence. *Graham directed Smith to make the house appear to be ransacked. She directed Smith to tie her arms and tape her mouth. Graham wanted Smith to flip over the couch in the living room claiming that[,] when Joe Wright got robbed the last time[,] money was stolen from under the couch.* Smith stated he, Ridley, and Carolyn Graham were to equally share in the proceeds of the theft of the currency. After the theft, the bags were taken to the residence of his sister Tamara Smith. On or about Saturday April 7, 2001, Sentell Smith opened the two items of luggage and discovered the two bags contained 48 kilograms of cocaine. Smith thereafter notified Ridley of his discovery and asked Ridley to take the cocaine from his possession.

Doc. #108 at Ex. A, p. 4. Defendant argues that the emphasized sentences suggest that she did not know that she possessed drugs in her home, believing instead that she had stored and removed U.S. currency. *Id.* at 2. Building upon that premise, Graham contends that a properly instructed Grand Jury could not have indicted her for knowingly possessing with intent to distribute the cocaine.[1] *Id.* The Defendant, thus, posits that the Grand Jury must have been erroneously instructed and requests that the Court order the production of the relevant Grand Jury transcripts or that it conduct an *in camera* review of those transcripts in order to ascertain whether the Grand Jury was properly instructed. For reasons which follow, the Court will decline the Defendant's requests.

In *United States v. Overmyer,* 899 F.2d 457 (6th Cir.), *cert. denied,* 498 U.S. 939, 111 S.Ct. 344, 112 L.Ed.2d 308 (1990), the Sixth Circuit discussed the "well-accepted" principles that indictments returned by a Grand Jury "are presumed valid" and that, therefore, courts "exercise extreme caution in dismissing an indictment for alleged grand jury misconduct." *Id.* at 465. *Accord, United States v. Buffington,* 815 F.2d 1292, 1304 (9th Cir.1987) (noting that "an indictment regular on its face and returned by a legally constituted and unbiased grand jury is presumed to be valid; the party challenging this presumption faces a heavy burden"). Herein, Graham has not overcome the presumption of validity. The statements from Brawner's affidavit upon which Graham bases her motion indicate that Sentell Smith thought he was stealing money, rather than 48 kilograms of cocaine; however, those state-

---

**1.** In Count 4, Graham is charged with knowingly possessing with intent to distribute more than 5 kilograms of cocaine, on or about April 6, 2001, the date upon which the cocaine was allegedly stolen from her residence. Counts 1 and 2 charge her with knowingly conspiring to possess with intent to distribute cocaine.

ments do not demonstrate that *she* mistakenly believed that currency rather than cocaine was in the two pieces of luggage which were stolen from her residence. Therefore, the Court cannot accept the factual predicate for Defendant's motion that the evidence presented to the Grand Jury raised a question as to whether she knew the luggage contained cocaine. Absent that factual predicate, any reasonable basis for arguing that the Grand Jury was erroneously instructed disappears. Consequently, if the Court were to grant Graham's request for production or an *in camera* review of the transcript of the instructions to the Grand Jury, there would be no reason for denying a request for similar relief by any other criminal defendant.

Nevertheless, one might argue that the Court should conduct an *in camera* review of the instructions to the Grand Jury, since no party will suffer prejudice as a result of such a review. The Court declines to conduct an *in camera* review, since it would serve no useful purpose. Courts have held that the "prosecutor is under no obligation to give the grand jury legal instructions." *United States v. Zangger*, 848 F.2d 923, 925 (8th Cir.1988). *Accord, United States v. Lopez–Lopez*, 282 F.3d 1, 9 (1st Cir.), *cert. denied*, 536 U.S. 949, 122 S.Ct. 2642, 153 L.Ed.2d 821 (2002); *United States v. Kenny*, 645 F.2d 1323 (9th Cir.), *cert. denied*, 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981). Thus, in *United States v. Battista*, 646 F.2d 237 (6th Cir.), *cert. denied*, 454 U.S. 1046, 102 S.Ct. 586, 70 L.Ed.2d 488 (1981), the Sixth Circuit indicated that, even if an incorrect instruction were given to the Grand Jury, "the indictment was valid on its face and was sufficient to require a trial of the indictment. *Costello v. United States*, 350 U.S.

359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Slepicoff*, 524 F.2d 1244 (5th Cir.1975)." *Id.* at 242.[2] *See also, Overmyer*, 899 F.2d at 464 (noting that "[c]ourts do not encourage tampering with the grand jury indictment even where faulty instructions are given"). Thus, if this Court were to conduct an *in camera* review of the instructions and were to discover that the prosecutor failed to define "knowingly" properly, it could not dismiss the prosecution as a result. Consequently, conducting an *in camera* review would not serve any purpose.

Additionally, it bears emphasis that proceedings before a Grand Jury are secret. Rule 6(e)(2) of the Federal Rules of Criminal Procedure codifies the rule of secrecy regarding proceedings before a Grand Jury. In *United States v. Procter & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), the Supreme Court explained the general policies upon which the rule of secrecy is based:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosure by persons who have information with respect to the commission of crimes; (5) to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

**2.** In *Battista,* the defendant argued that the Grand Jury had not been properly instructed on the meaning of obscenity.

*Id.* at 681 n. 6, 78 S.Ct. 983. *See also, Federal Deposit Ins. Corp. v. Ernst & Whinney,* 921 F.2d 83, 86 (6th Cir.1990); *In re Grand Jury Proceedings,* 851 F.2d 860 (6th Cir.1988). However, the rule of secrecy has exceptions, which are set forth in Rule 6(e)(3), one of which, Rule 6(e)(3)(C)(i), authorizes disclosure "when so directed by a court preliminarily to or in connection with a judicial proceeding." Disclosure under Rule 6(e)(3)(C)(i) is permitted only where, 1) the disclosure is sought either "preliminarily to" or "in connection with" a judicial proceeding, and 2) the party requesting such disclosure has demonstrated a particularized need for the requested Grand Jury materials. *See e.g., United States v. Sells Engineering, Inc.,* 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983); *United States v. Baggot,* 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983); *In re Grand Jury 89–4–72,* 932 F.2d 481, 483 (6th Cir.) (stressing that the need for the materials must be "compelling"), *cert. denied,* 502 U.S. 958, 112 S.Ct. 418, 116 L.Ed.2d 438 (1991). Herein, the Defendant has failed to demonstrate a particularized need for the disclosure of a transcript of the instructions given to the Grand Jury, since the Court has rejected the factual premise supporting her motion and, furthermore, because the Court would not dismiss this prosecution even if the Grand Jury was given an incorrect instruction on the meaning of "knowingly."

Based upon the foregoing, the Court overrules Defendant's Motion for Production or Judicial Review of Grand Jury Transcripts (Doc. # 108).[3]

---

3. During oral argument on this motion, Defendant's counsel referred to a decision in which Judge Susan Dlott dismissed an indictment, without prejudice, because the Government had falsely stated on a number of occasions to the defendant, the court and the Grand Jury that it did not possess certain documents. The defendant appealed Judge Dlott's failure to dismiss the prosecution with prejudice. Shortly after this Court heard oral arguments, the Sixth Circuit issued its decision in that case, concluding that it was without appellate jurisdiction over the defendant's appeal. *United States v. Yeager,* 303 F.3d 661 (6th Cir.2002). Simply stated, the issues addressed by Judge Dlott in *Yeager* are not at all analogous to those raised by the instant motion.